THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE REDMAN, Defendant-Appellant.

Fourth District No. 4—85—0356

Opinion filed March 6, 1986.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Kevin T. McClain, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial in the circuit court of Sangamon County, defendant, Steve Redman, was convicted of rape in violation of section 12—13 of the Criminal Code of 1961 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—13) and home invasion in violation of section 12—11 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 12—11). Defendant was sentenced to 22 years of imprisonment. Defendant appeals. We now affirm.

Defendant was charged by information with the rape of the complainant and the home invasion of complainant's home.

Prior to trial defendant filed a motion *in limine* requesting that the State be precluded from impeaching defendant's credibility with defendant's prior convictions, July 24, 1984, for rape, deviate sexual assault, armed robbery, and a prior conviction, theft over $300, May 7, 1980. The court denied the motion and ruled that all four prior convictions were admissible for impeachment purposes.

A jury trial was held. The following witnesses testified on behalf of the State.

The 18-year-old complainant testified that in May 1984 she lived in a two-bedroom house in Springfield. Complainant lived with a roommate, Kathy Prosise.

During the afternoon of May 22, 1984, complainant, Prosise, and another friend, Debbie Durheim, drove to Lake Springfield for a party at which they met defendant. After the party complainant returned home. While complainant was home alone, defendant came to her residence looking for Prosise. Defendant waited until Prosise returned. When Prosise returned, she and defendant went into Prosise's bedroom. Defendant spent the night with Prosise. Complainant next saw defendant as he was walking out of the bathroom the following morning.

During the evening of May 25, 1984, Prosise stayed with Durheim's children at Durheim's home while Durheim and complainant drove around and talked. Before she had gone out with Durheim, complainant had not seen defendant at her own residence. On cross-examination complainant stated that Prosise had told her earlier that she would be spending the night at Durheim's residence.

At approximately 2:15 a.m. on May 27, 1984, complainant re-

turned home alone. At approximately 2:30 a.m., complainant went to bed and to sleep, leaving the lights on as she ordinarily did.

At approximately 3 a.m. complainant awoke, believing that she heard the storm door rattling. When complainant entered the living room, she saw defendant without a shirt. On cross-examination, complainant stated that she did not see a ring on defendant's right hand. Defendant immediately switched off the ceiling light which had been on in the living room.

When complainant asked defendant why he was there, defendant responded that he heard someone say, "Come in." When complainant responded that no one had said, "Come in," defendant stated, "Well, it must have been on the radio." No radio was on at the time. When defendant asked about Prosise's whereabouts, complainant told him that Prosise was at Durheim's residence. On cross-examination, complainant stated that defendant said that Prosise told him to meet her at her own residence. Complainant also stated on cross-examination that she was not afraid of defendant since he had stated he came to see Prosise. Defendant asked if he could use the bathroom and complainant responded that he could. Although a telephone was present, complainant did not telephone anyone while defendant was in the bathroom.

When defendant came out of the bathroom he was holding a knife approximately six to seven inches long. He put a hand on complainant's shoulder and told her to do exactly as he said or he would kill her. Defendant pushed complainant into her bedroom, shoved her onto the bed, and forced her to have sexual intercourse with him. Complainant stated that defendant did not ejaculate during intercourse. Afterwards, defendant apologized profusely and drove away in his automobile.

After defendant left, complainant was frightened, so she decided to leave. She first drove to her boyfriend's house, but he was not at home. She next drove to Durheim's residence. Complainant told Prosise and Durheim that she had been raped by defendant. Complainant then went to the hospital, and the police were notified.

Complainant testified that prior to May 26, 1984, the window screens on the outside of the house had not been cut. Upon her return home from the hospital, complainant saw that the window screen outside Prosise's bedroom had been cut. Photographs of the house and the cut screen were identified and admitted into evidence.

Complainant identified two exhibits as photographs of her face taken the day after the rape which depicted a mark upon her lip. Complainant testified that the mark resulted from defendant slapping

her during the rape.

On May 31, 1984, complainant attended a lineup at which she identified defendant as her assailant.

Kathy Prosise testified next. She stated that she met defendant at a party at Lake Springfield on May 22, 1984, and that defendant stayed with her in her bedroom the night of the party. Prosise's testimony substantially corroborated complainant's testimony with respect to the events at Durheim's residence before and after the alleged rape. Prosise stated that she had not seen defendant at her residence prior to going over to Durheim's residence on May 25, 1984. Prosise added that complainant was carrying a knife when she arrived at Durheim's house at approximately 4 a.m.

Prosise also testified that when she returned home on May 26, 1984, she noticed that her bed had been moved and that the alarm clock which normally sat on the windowsill had been knocked onto the floor. Prosise stated that she normally leaves her window open six inches. She did not look at her window until several days later, at which time she noticed that the screen had been cut.

Debbie Durheim's testimony also corroborated complainant's testimony concerning the party at Lake Springfield and the events immediately before and after the alleged rape.

Joseph Goulet, a detective with the Springfield police department, testified that on May 26, 1984, he spoke with complainant at Memorial Hospital in Springfield. On cross-examination, Officer Goulet stated that he did not see any visible marks of injury on complainant. Officer Goulet also stated during cross-examination that complainant made no mention of the initial conversation which complainant stated took place between her and defendant in the living room. After speaking with complainant, Prosise, and Durheim, Officer Goulet directed other officers to go to defendant's residence and arrest him for sexual assault.

When defendant was brought to Officer Goulet's office, he was immediately advised of his constitutional rights. Defendant told Officer Goulet that he had stopped by complainant's residence at approximately 7 p.m. on May 25, 1984, and had spoken with complainant and Prosise. Defendant stated that later in the evening he went out on a date with a girl named Linda whose last name defendant did not know. Defendant stated that he took Linda to her home approximately at midnight and then he went immediately home. Defendant told Officer Goulet that he met complainant at Lake Springfield the previous week. Defendant stated that he neither touched complainant nor had sexual intercourse with her.

Officer Goulet testified that during the course of his investigation, he investigated complainant's residence. During the investigation Officer Goulet saw fresh footprints in the mud and trampled weeds in different locations around the house. The weeds around the house were approximately a foot high, and Officer Goulet became wet as he walked among the weeds. Officer Goulet also saw that the screen outside the window of Prosise's room had been slashed. Also during the course of his investigation, Officer Goulet went to defendant's residence to supervise a search for a knife, but no knife was found.

Margaret Barrett, a Springfield police officer, testified that she went to Memorial Hospital a little after 4 a.m. on May 26, 1984, to assist in taking a rape report. She then went to defendant's residence to arrest him. When Officer Barrett advised defendant he was under arrest for rape, he denied having committed the offense. As defendant dressed he picked up a pair of wet pants and said, "I'm not going to put these on. They got wet last night." Officer Barrett saw that the pants were wet from the bottom of the shin area on both legs. Lying next to the pants was a pair of leather work boots which were muddy and covered with small pieces of weeds and grass near the sole. Officer Barrett identified two exhibits as the pair of pants and the pair of boots which were taken from defendant's bedroom.

Bonnie Lowe, a crime scene technician, testified that the grass around complainant's house was high but had been trampled along the edge of the house. Lowe dusted the house for fingerprints. No suitable fingerprints could be lifted from the inside of the house. Lowe found a fingerprint on the right hand side of the window outside Prosise's bedroom. William Sours, an evidence technician for the Springfield police department and an expert in fingerprint analysis, identified the fingerprint found by Lowe as the print of defendant's right thumb. Sours identified 16 characteristics common to both prints.

The parties stipulated that the examplars containing defendant's fingerprints were in fact defendant's fingerprints. The parties further stipulated that laboratory tests conducted during complainant's examination at Memorial Hospital for the purpose of determining the presence of semen revealed that no semen was present.

The State rested its case. The following witnesses testified on behalf of the defense. Defendant did not testify.

Charles Ramey, an emergency room physician, thoroughly examined complainant during the early morning hours of May 26, 1984. An examination was conducted to determine whether there was any evidence of trauma, such as marks, bruises, or abrasions. Dr. Ramey found no evidence of trauma. However, Dr. Ramey stated that it is

possible that he may have missed a mark on a lip and not have categorized such a mark as trauma. Dr. Ramey prepared specimens for testing the presence of semen. Dr. Ramey testified that semen could be present even if intercourse has occurred without ejaculation.

Rick Hinds, a Springfield police officer, testified that he spoke with complainant at Memorial Hospital. According to Officer Hinds, complainant stated that following the rape, she drove around the area trying to lose her assailant in fear that he was still in the area. Complainant stated that she eventually ran out of gas and then walked to an acquaintance's residence.

Robert L. Redman, defendant's father, testified that defendant had learning disabilities and was hyperkinetic and functionally illiterate. He also stated that the primary piece of jewelry defendant wears is a large silver and turquoise ring.

Norma Redman, defendant's mother, testified that at about 11:30 p.m. on May 25, 1984, defendant came home with a woman named Linda. As Mrs. Redman went to bed, her son and Linda were upstairs. About 11:45 p.m. defendant left to take Linda home.

Thomas Appleton, an attorney, testified that he was present at the lineup at which complainant identified defendant as her assailant. Appleton stated that complainant did not appear nervous, but instead, appeared extremely calm.

Linda Smith testified that she went to a party with defendant on May 25, 1984. It rained during the evening. The party was large and took place in a trailer. Because there was only one bathroom in the trailer, defendant stepped outside the trailer. At approximately 11 p.m. they left the party and went to defendant's home. At approximately 11:45 p.m. defendant took Smith home. Between 12:30 and 1 a.m. on May 26, 1984, she and defendant talked on the telephone. Smith was unaware of defendant's whereabouts at 3 a.m. on May 27, 1984.

The defense rested its case.

During closing argument the following exchange occurred:

"[Prosecutor]: I ask you on behalf of the People of the State of Illinois who I represent, and on behalf of the victim in this case—

[Defense counsel]: That is improper.

[Prosecutor]: —to find—

THE COURT: I believe that it may be. Don't—

[Defense counsel]: Thank you, Your Honor.

[Prosecutor]: That victims also are defenseless in situations such as this. She is telling you exactly what occurred, and her

testimony is uncontradicted, ladies and gentlemen. I ask you now to return the only verdict which is based upon the evidence in this case, and that is the verdict of guilty as charged. Thank you, very much."

Following the closing arguments defendant made an oral motion for a mistrial based upon the above comments made by the prosecutor. The trial court denied the motion, stating that even if the comment was improper, it was corrected by the court's admonition to the prosecutor.

Following the court's instructions and the jury's deliberations, the jury returned a verdict of guilty with respect to both rape and home invasion.

At a hearing held May 20, 1985, defendant's post-trial motions were denied. At the same hearing defendant was sentenced to serve 22 years' imprisonment. The court stated that defendant's sentence was based upon the presentence investigation report, the evidence heard in mitigation and aggravation, the arguments of counsel, and the statement of defendant himself. Defendant's previous convictions for rape, deviate sexual assault, armed robbery, and theft had been brought to the attention of the court at the sentencing hearing.

On appeal defendant argues that: (1) the trial court erred in denying defendant's motion *in limine* requesting the exclusion of evidence of defendant's prior convictions for impeachment purposes; (2) the statements made by the prosecutor during the closing argument resulted in substantial prejudice to defendant; (3) the evidence was insufficient to sustain defendant's convictions for home invasion and rape; and (4) defendant is entitled to a new sentencing hearing if his prior convictions are reversed on appeal. The State disputes defendant's first three arguments but concedes the fourth.

█ Defendant argues first that the trial court erred in denying his motion *in limine* seeking to preclude the State from introducing defendant's prior convictions for impeachment purposes. The State argues that defendant's claim was not properly preserved for review and, in any event, that defendant's motion was properly denied.

In support of its argument that defendant's claim was not properly preserved for review, the State cites *Luce v. United States* (1984), 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460. In *Luce*, the Supreme Court held that a defendant who does not testify at trial is not entitled to appellate review of a trial court's ruling denying a motion *in limine* seeking to forbid the use of prior convictions for impeachment purposes. The court noted that "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment

by a prior conviction is wholly speculative." (469 U.S. 38, 41, 83 L. Ed. 2d 443, 447, 105 S. Ct. 460, 463.) The court noted that a court's preliminary ruling is subject to change as the case unfolds and that the government may elect not to use an arguably inadmissible prior conviction. Without the defendant's testimony a court experiences difficulty in balancing the probative value of a prior conviction against the prejudicial effect to the defendant as required by Federal Rule of Evidence 609(a) (Fed. R. Evid. 609(a)). The court stated that because an accused's decision of whether to testify seldom turns on the resolution of one factor, a court cannot presume that a defendant decided not to testify due to the denial of his motion *in limine*. If such a presumption were made, a reviewing court would never be unable to conclude that the denial of the motion *in limine* was harmless since an error that presumptively kept the defendant from testifying could not logically be categorized as harmless error. Therefore, requiring the defendant to testify would discourage the making of motions *in limine* for the sole purpose of "planting" reversible error in the event of conviction.

The only case in which an Illinois court has addressed appellate evidence of review of a trial court's order denying a defendant's motion *in limine* seeking to exclude prior convictions is *People v. Smith* (1979), 73 Ill. App. 3d 577, 392 N.E.2d 347. In *Smith*, the Fifth District of the Appellate Court noted that a motion *in limine* is a proper method of bringing an issue concerning use of prior convictions for impeachment purposes to the attention of the court, and, for that reason, the court held that a defendant need not take the stand and testify and then object to the attempted introduction of his prior conviction. However, even in *Smith*, the court noted that the better practice would be for the court to delay its ruling on the preliminary motion until after presentation of the State's evidence.

Because we find the rationale underlying the decision in *Luce* more persuasive, we respectfully disagree with the Fifth District. Because defendant failed to testify in the trial court, he cannot challenge on appeal the trial court's adverse ruling with respect to his motion *in limine* seeking to preclude the State from introducing defendant's prior convictions for impeachment purposes. Even if defendant had properly preserved the issue for review it would have failed on the merits.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, our supreme court adopted then proposed Federal Rule of Evidence 609 (Fed. R. Evid. 609) as the rule in Illinois with regard to use of prior convictions for impeachment purposes. The court noted that the

" 'most significant feature of the rule is the requirement that the evidence of conviction be excluded if the judge determines that its probative value is outweighed by the danger of unfair prejudice.' " (47 Ill. 2d 510, 517, 268 N.E.2d 695, 699.) In determining whether the prejudicial effect of a prior conviction outweighs its probative value, the court should examine the following factors: (1) whether the prior conviction is veracity-related, (2) the recency of the prior conviction, (3) the witness' age and other circumstances surrounding the prior conviction, (4) the length of the witness' criminal record and his conduct subsequent to the prior conviction, (5) the similarity of the prior offense to the instant offenses thus increasing the danger of prejudice, (6) the need for the witness' testimony and the likelihood he would forego his opportunity to testify, and (7) the importance of the witness' credibility in determining the truth. *People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.

In the instant case defendant's recent convictions for rape (1984), deviate sexual assault (1984), armed robbery (1984), and theft (1980) were all related to defendant's veracity. The record reflects neither special circumstances surrounding the prior convictions which would mitigate their probative value nor any rehabilitation as reflected by defendant's conduct subsequent to the prior convictions. Although the need for defendant's testimony was great, since apparently no other witnesses could establish defendant's whereabouts at the time of the instant offenses, the exclusion of the prior convictions would have deprived the State of using the only effective means of attacking defendant's credibility. (See *People v. Medreno* (1981), 99 Ill. App. 3d 449, 402 N.E.2d 588.) Defendant's credibility would have been a key to the jury's ability to determine the truth. Although the previous offenses of rape and deviate sexual assault were identical or similar to the instant rape offense, similarity alone does not demand exclusion. (*People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.) Defendant asserts that the trial court could have avoided prejudice resulting from the similarity of the offenses by allowing impeachment by the prior convictions for armed robbery and theft while precluding impeachment by the prior convictions for rape and deviate sexual assault. However, the State had the right and the obligation to use all of the admissible impeaching evidence it possessed in order to destroy defendant's credibility. *People v. McKibbins* (1983), 96 Ill. 2d 176, 449 N.E.2d 821, *cert. denied* (1983), 464 U.S. 844, 78 L. Ed. 2d 136, 104 S. Ct. 145.

A review of the record indicates that the court properly balanced the probative value of defendant's prior convictions with the danger

of unfair prejudice to defendant. Therefore, even if defendant's claim had been properly preserved for review, we find no abuse of discretion in the trial court's denial of defendant's motion *in limine* seeking to preclude the State from introducing evidence of defendant's prior convictions.

Defendant argues next that remarks made by the prosecutor during the State's closing argument resulted in substantial prejudice to defendant. Improper remarks made by a prosecutor do not require reversal unless they result in substantial prejudice to the accused. (*People v. Medley* (1983), 111 Ill. App. 3d 444, 444 N.E.2d 269.) Defendant argues that the prosecutor improperly placed the integrity of the office of the State's Attorney behind the credibility of the complainant when the prosecutor told the jury that "she was telling you exactly what occurred." While it is improper for a prosecutor to place the integrity of the office of the State's Attorney behind the credibility of a witness, the prosecutor may discuss the witnesses and their credibility, and the prosecutor is entitled to assume the truth of the State's evidence. (*People v. Bibbs* (1981), 101 Ill. App. 3d 892, 428 N.E.2d 965.) As the instruction to the jury provides, closing arguments are made by the attorneys to dismiss the facts and circumstances and should be confined to the evidence "and *** reasonable inferences to be drawn from the evidence." (Illinois Pattern Jury Instructions, Criminal, No. 1.03 (2d ed. 1981).) Therefore, the prosecutor's statement was within the permissible bounds of closing argument. Defendant also attacks the prosecutor's statement that the complainant's testimony was "uncontradicted." However, a prosecutor may comment upon the uncontradicted nature of the State's evidence and the testimony of its witnesses. (See *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) Finally, defendant argues that the prosecutor's statement that "victims also are defenseless" was calculated to inflame the jury. The prosecutor's remark was in response to defendant's argument that he is defenseless in the prosecution against him. A defendant ordinarily cannot claim error where a prosecutor's remark was in reply to the defense counsel's argument. (See *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) Even if any of the remarks made by the prosecutor in his closing argument were improper, given the strength of the State's evidence and the brevity of the remarks, there is no reasonable basis for believing that the jury was prejudiced by, or even influenced by, the remarks.

Defendant next challenges the sufficiency of the evidence. He argues that the evidence is insufficient to sustain his convictions for rape and home invasion due to inconsistencies and improbabilities

in complainant's testimony. He also stresses the lack of scientific evidence to corroborate complainant's testimony. The State argues that the proof at trial was not so unsatisfactory as to create a reasonable doubt of defendant's guilt.

In a prosecution for rape, the testimony of the complainant must be clear and convincing or corroborated by other facts or evidence. (*People v. Daniels* (1984), 129 Ill. App. 3d 894, 473 N.E.2d 517.) However, clear and convincing evidence is not synonymous with uncontradicted or unimpeached testimony. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179.) Minor variances in the testimony may occur, and, if so, these variances constitute mere discrepancies going only to credibility. (*People v. Wright* (1972), 3 Ill. App. 3d 829, 279 N.E.2d 398.) It is the task of the trier of fact to weigh these discrepancies, and if the discrepancies are so minor as not to detract from the reasonableness of the victim's story, her testimony may be found clear and convincing. *People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179; *People v. Wright* (1972), 3 Ill. App. 3d 829, 279 N.E.2d 398.

Defendant argues that the complainant's testimony was not clear and convincing since it conflicted with other evidence. Defendant points to complainant's failure to tell the police about the conversation between complainant and defendant when she first discovered his presence in her house and to the inconsistency between complainant's testimony that she drove to Durheim's residence and complainant's statement to Officer Hinds that her car ran out of gas before reaching Durheim's residence. Defendant also states that complainant's belief that she heard the storm door rattling is inconsistent with the evidence that her assailant entered through a window in Prosise's bedroom. Any inconsistencies between complainant's testimony and other evidence concerning complainant's statements to the police may be explained by the fact that she talked with the police at a time when she was nervous and frightened, immediately after the rape. Complainant's statement that she heard the storm door rattling must be read in conjunction with complainant's statement that a noise awakened her, a noise she believed to be the storm door rattling. The alleged inconsistencies in complainant's testimony are minor and do not detract from the reasonableness of her story.

Defendant argues further that complainant's testimony was not clear and convincing due to the improbabilities of her own account of her behavior. Defendant emphasizes complainant's testimony that she was not in fear when defendant turned off the lights. At the time defendant turned off the lights, complainant assumed that defendant

was present only to see Prosise and defendant had done nothing else which would place complainant in fear. Defendant states that it is improbable that complainant would not attempt to escape or telephone for assistance. A rape victim's failure to escape or seek assistance depends upon the totality of the facts and circumstances of the case. (See *People v. Daniels* (1984), 129 Ill. App. 3d 894, 473 N.E.2d 517.) Given that defendant had done nothing to place complainant in fear prior to going into the bathroom and that defendant came out of the bathroom carrying a knife and making threats, complainant's failure to escape is not unreasonable. There is no requirement that a rape victim attempt to escape where to do so would endanger her life. (*People v. Hendon* (1975), 33 Ill. App. 3d 745, 338 N.E.2d 472.) Complainant's failure to telephone for assistance after defendant left the house is not unreasonable in light of her frightened condition and the fact that she immediately sought assistance by driving to her boyfriend's residence and to Durheim's residence. We conclude that complainant's testimony was reasonable as well as clear and convincing.

■■ Even assuming *arguendo* that complainant's testimony was not clear and convincing, her testimony was sufficiently corroborated. The State produced evidence linking defendant to the scene of the crime, including his fingerprint on the windowsill and the fact that his pants and boots were wet and muddy. The State also introduced photographs of complainant which depicted a mark on her face which was allegedly caused by defendant. Also, the record reveals that complainant made a prompt complaint to her friends and to the authorities. A prompt complaint can be sufficient corroboration of a victim's testimony in order to sustain a conviction for rape. (*People v. Ellison* (1984), 123 Ill. App. 3d 615, 463 N.E.2d 175; *People v. Graham* (1978), 60 Ill. App. 3d 1034, 377 N.E.2d 179; *People v. Sims* (1972), 5 Ill. App. 3d 727, 283 N.E.2d 906.) Defendant also stresses the lack of physical evidence supporting complainant's claim that sexual intercourse occurred. While the lack of physical evidence of rape may tend to weaken the State's case, it is not fatal to the State's case. *People v. Szudy* (1982), 108 Ill. App. 3d 599, 439 N.E.2d 137; *People v. Morrow* (1982), 104 Ill. App. 3d 995, 433 N.E.2d 985.

■ We conclude that complainant's testimony is both clear and convincing and corroborated by other testimony and evidence. Questions of credibility are for the jury to weigh, and we cannot overturn a guilty verdict unless the proof is so unsatisfactory as to create a reasonable doubt of defendant's guilt. (*People v. Szudy* (1982), 108 Ill. App. 3d 599, 439 N.E.2d 137.) The proof herein is sufficient to sustain defendant's convictions for rape and home invasion.

■■ Finally, defendant argues, and the State concedes, that defendant is entitled to a new sentencing hearing in the event that defendant's prior convictions, which were considered by the court in sentencing defendant, are reversed on appeal. Because the Supreme Court of Illinois has recently denied defendant's petition for leave to appeal (*People v. Redman* (1985), 135 Ill. App. 3d 534, 481 N.E.2d 1272, *appeal denied* (1985), 111 Ill. 2d 560, the issue has been rendered moot.

For the foregoing reasons, the judgment of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN and SPITZ, JJ., concur.