THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KENNETH LEE MORGAN, Defendant-Appellant.

Fourth District No. 4—86—0233

Opinion filed November 24, 1986.

Daniel D. Yuhas and John J. Hanlon, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On January 30, 1986, the defendant, Kenneth Lee Morgan, was convicted by a jury of criminal sexual assault. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1).) An information dated November 6, 1985, charged the defendant with the commission of an act of sexual penetration in that he pushed a table leg into the anus of the victim. At trial, however, the State proved the defendant guilty of criminal sexual assault upon a theory of accountability in that he sat upon the victim so that another individual could insert the table leg into the victim's anus. On March 7, 1986, the defendant was sentenced to the Department of Corrections for a term of four years. We affirm.

The defendant asserts three grounds which warrant reversal upon appeal: first, that the testimony of the complaining witness was neither clear and convincing, nor substantially corroborated so as to prove him guilty beyond a reasonable doubt; second, that the State failed to establish that the defendant possessed the requisite intent to be convicted for criminal sexual assault upon a theory of accountability; and, third, that the State improperly withheld evidence of a medical examination of the victim which was referred to at the sentencing hearing by the victim's mother.

At trial the complainant, the victim, testified that he was 15 years old and resided in the same apartment building as the defendant. The victim stated that early in November he had run away from home and had asked Chris Eubanks, the defendant's roommate, if he might stay at their apartment. The victim spent the night in the apartment with the defendant and Eubanks. The next morning, at approximately 8 a.m., Calvin Fakes and Keefer Jones came to the apartment.

The victim stated that Fakes, Jones, Eubanks, and the defendant began acting strange. He stated that they were talking about a theft in which Fakes and Jones had been involved. Shortly thereafter, the

victim and the defendant became involved in a wrestling struggle during which the defendant told the victim "he was going to stick a stick down his rear end." Both Eubanks and Fakes later became involved in the wrestling match. The defendant then threw the victim on his stomach and sat on his back, pinning the victim to the floor.

While the victim was sitting on his back, someone applied vaseline to the victim's anal area. The victim stated that he then saw Keefer Jones get a stick and put it in his anus. The victim testified that the stick did go inside his rectal area. The victim further testified that he continued to tell the defendant and Jones to get off of him during this entire episode.

The victim stated that he spoke with the police on the date the incident occurred. On cross-examination the victim admitted that he had told Officer Rutherford that there was no penetration of his rectum. The victim, however, was unclear as to the exact meaning of the term "penetration," asking defense counsel, "What do you mean by penetration?"

Next, the State called Calvin Fakes, who stated that he was a friend of the defendant and present at the time of the incident. Fakes corroborated the fact that the defendant and the victim were wrestling on the floor. He further stated that Jones later became involved in the struggle during which Jones pulled down the victim's pants and "started to stick the table or couch leg in his butt." Fakes testified that the defendant was sitting on the victim during the incident but that he had his back to Jones. He further indicated that the victim did not make any noise during the incident.

The State's final witness, Officer Patrick McElroy, testified that he had interviewed the defendant on November 8, 1985, regarding a complaint filed by the victim. McElroy stated that the defendant acknowledged the wrestling match but told him that he was not responsible for sticking anything up the victim's rectum. The defendant told McElroy that Jones had pulled a leg off a love seat, applied vaseline, and stuck it up the victim's anus. McElroy related that initially defendant denied that the victim had struggled or screamed, but later admitted to a struggle when McElroy told him that Fakes, Jones, and the victim had stated that a struggle had in fact ensued.

The defense called Officer Rutherford, who testified that he interviewed the victim regarding the incident. Rutherford stated that the victim told him that there had been no actual penetration of his rectum and that the couch leg had come close to going into his butt but never did. Rutherford, however, further stated that the victim appeared shy and embarrassed during the interview. Rutherford indi-

cated that the victim hesitated before answering each question and did not look him in the eye. Rutherford stated that he got the impression that the victim did not wish to discuss this matter with another man.

The defendant, Kenny Morgan, testified that he did sit on the victim's back but that he did not see Jones stick anything in the victim's anal area. The defendant admitted that he was no more than 6 inches to 1 foot away from Jones when the incident occurred, but that because of the particular wrestling hold he was utilizing, he never had any idea what happened behind him. He stated that the victim was struggling and screaming but that he never turned around to face Jones to see what was going on.

The State, in rebuttal, called the victim, who testified that the defendant was sitting on his back and the defendant's hands were in front of him. The victim further testified that the entire episode lasted approximately five to six minutes.

Prior to imposing sentence, the court allowed the victim's mother to testify as evidence of aggravating factors, regarding the effects of this incident upon her son. She indicated that her son had been examined by an emergency-room physician after the incident. She testified she had taken her son to the hospital after the police suggested she do so. Subsequent to this testimony, the defense counsel filed a supplemental motion for a new trial alleging discovery violations with respect to the medical examination of the victim. The court denied this motion. The court then cited several mitigating factors and imposed a minimum sentence of four years.

Defendant's initial contention upon appeal is that the testimony of the complaining witness was neither clear and convincing nor substantially corroborated so as to prove the defendant guilty beyond a reasonable doubt. The defendant hinges this argument upon the fact that there was some discrepancy in the victim's testimony regarding penetration, which is a necessary element of the offense charged.

■■ ■ The defendant maintains that since he has been charged with criminal sexual assault, the court should apply the "clear and convincing" burden of proof. We have continued to apply this standard, which requires that a conviction for criminal sexual assault be upheld when the testimony of the complaining witness is clear and convincing or substantially corroborated by other evidence. (*People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958.) Clear and convincing, however, is not synonymous with uncontradicted or unimpeached testimony. (141 Ill. App. 3d 691, 490 N.E.2d 958.) Discrepancies or omissions of detail do not destroy the validity of the evidence

presented. *People v. Palmer* (1984), 125 Ill. App. 3d 703, 709, 466 N.E.2d 640, 645.

■■ When the testimony of the victim is not clear and convincing, it must be substantially corroborated by some other factual evidence or circumstances. (*People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1067, 469 N.E.2d 1137, 1145.) Such corroborating evidentiary matters include eyewitness accounts, confessions or admissions by the defendant, prompt reporting of the incident by the victim, or medical testimony which supports allegations of abuse. 127 Ill. App. 3d 1056, 469 N.E.2d 1137.

■■■ A conviction for criminal sexual assault requires an act of "sexual penetration" (Ill. Rev. Stat. 1985, ch. 38, par. 12—13), which is defined as "any intrusion, however slight *** of any *** object into the sex organ or anus of another" (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f)). It is not necessary that corroborating medical evidence be admitted to prove that penetration did occur. (*People v. Graham* (1978), 60 Ill. App. 3d 1034, 1044, 377 N.E.2d 179, 186.) Where evidence of penetration is presented at trial, the question of whether penetration has occurred is one of fact for the jury to determine. (*People v. Shivers* (1975), 29 Ill. App. 3d 359, 360, 330 N.E.2d 288, 289.) Courts must not encroach upon the jury's function to weigh the credibility and otherwise assess the evidence. (*People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369, 1377-78, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364, *rehearing denied* (1984), 467 U.S. 1268, 82 L. Ed. 2d 864, 104 S. Ct. 3563.) Consequently, a reviewing court will set aside a guilty verdict only if evidence is so palpably contrary to the finding or so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt about the accused's guilt. *People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369.

■■ At trial the victim testified that the defendant sat on his back while Jones forced the stick into his anus. Although the victim admitted that he might have told the officer that penetration did not occur, the testimony seemed to indicate that the victim was unsure as to what penetration actually consisted of. The victim did, however, testify on direct and reiterate on cross-examination that the couch leg did in fact enter his anus. The police officer who interviewed the victim stated that the victim was embarrassed and hesitant to discuss the situation. In this respect, the discrepancies in the victim's testimony are minor, going to the credibility of his testimony, which was properly decided by the jury. Furthermore, the victim's testimony was substantially corroborated by Calvin Fakes, an eyewitness

to the entire incident, and the testimony of Officer McElroy, who interviewed the victim five hours after the incident occurred.

The defendant urges that the evidence introduced at trial did not meet the clear-and-convincing standard and was not substantially corroborated. While we find that the evidence presented at trial was both clear and convincing and substantially corroborated, this is not the typical sexual assault case for which the higher burden of proof originated. The underlying rationale of applying a more strict burden of proof in criminal-sexual-assault cases was that these types of allegations are easily made, difficult to defend against, and readily susceptible to problems of misidentification and fabrication. (*People v. Palmer* (1984), 125 Ill. App. 3d 703, 466 N.E.2d 640.) Here, the defendant was proved guilty on a theory of accountability. There were witnesses present who testified in detail about the incident. None of the problems inherent in the usual sexual-assault cases existed in this case. Therefore, while the higher standard of clear and convincing was met, this was not a case requiring such proof, and the reasonable-doubt burden of proof clearly supports the defendant's conviction.

The defendant's second contention is that the State failed to establish that he possessed the requisite intent on a theory of guilt by accountability as there was no evidence of a preconceived plan or a concurrent intent to sexually assault the victim.

In order to establish a defendant's legal accountability for commission of a crime, the State must prove beyond a reasonable doubt: (1) that the defendant solicited, aided, abetted, agreed, or attempted to aid another person in the commission of an offense; (2) that such participation must have taken place either before or during the commission of the offense; and (3) that such participation must have been concurrent, specific intent to promote or facilitate the commission of the offense. (See Ill. Rev. Stat. 1985, ch. 38, par. 5—2; *People v. Ruiz* (1983), 94 Ill. 2d 245, 256, 447 N.E.2d 148, 152, *cert. denied* (1983), 462 U.S. 1112, 77 L. Ed. 2d 1341, 103 S. Ct. 2465, *rehearing denied* (1983), 463 U.S. 1236, 77 L. Ed. 2d 1452, 104 S. Ct. 31.) Although mere presence at the scene of an offense or mere acquiescence in another's actions is ordinarily insufficient to establish accountability, one may be held to aid and abet without physically participating in the overt act. (*People v. Young* (1983), 116 Ill. App. 3d 984, 994, 452 N.E.2d 718, 724.) If the evidence shows that the defendant was present at the scene of the offense without disapproving or opposing it, the trier of fact may consider this conduct along with other circumstances in determining whether the defendant as-

sented to the commission of the offense and thereby aided or abetted the actor. 116 Ill. App. 3d 984, 452 N.E.2d 718.

 Mere conflict in testimony is insufficient to establish a reasonable doubt of guilt. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) It is the responsibility of the trier of fact to assess the credibility of the witnesses, and where the evidence is merely conflicting, a court of review will not substitute its judgment for that of the trier of fact unless it is shown to be manifestly erroneous. 63 Ill. 2d 296, 347 N.E.2d 733.

 Evidence adduced at trial indicated that the defendant threatened to sexually assault the victim during a wrestling match. The defendant then proceeded to sit on the victim while a friend placed vaseline on the victim's rectal area and on a couch leg. The defendant continued to hold the victim while his friend placed the couch leg in the victim's anus. This entire incident lasted approximately five to six minutes. The victim struggled and screamed throughout. The defendant, however, maintains that he was facing the opposite direction and was completely unaware of any sexual attack. The defendant does admit to being 6 inches to 1 foot from the place of the assault. The victim maintains that the defendant was laughing and looking about the room during the entire incident. The defense, at trial, merely presented some conflicting testimony, which was mainly elicited from the defendant. In light of the evidence presented, it was not manifestly erroneous for the jury to find that the defendant intentionally aided in the sexual assault of the victim.

 █ The defendant's final contention on appeal relates to evidence concerning a medical examination of the victim conducted after the assault which was testified to by the victim's mother at the sentencing hearing. The defendant maintains that the State withheld evidence in violation of Supreme Court Rule 412 (87 Ill. 2d R. 412) and that the trial court erred in denying the defense motion for a production of the medical report.

On February 14, 1986, the trial court entertained the defendant's motion for a new trial. The court denied the motion and proceeded to set the case for sentencing. At this time, the State tendered the victim's mother to testify about the impact of the crime upon her son. The State informed the court that the victim's mother was present in court, could not miss work again, and requested to have her testify. The victim's mother had previously contacted the investigating probation officer who prepared the presentence report to inform him of her son's condition both physically and psychologically. She testified that her son was currently seeing a psychologist, had

required medical attention immediately after the incident, and was currently being subjected to name calling by his friends.

On February 28, 1986, the date set for sentencing, the defense filed a supplemental motion for a new trial alleging that the State had failed to comply with discovery procedures. The defense maintained that evidence of a medical examination of the victim was never tendered and would be helpful in establishing whether or not penetration had occurred. The court continued the matter, and on March 7, 1986, the court denied the motion, specifically noting the following: (1) the victim's mother was not a witness at trial, but merely testified at the sentencing hearing to demonstrate the impact upon the victim; (2) she was subject to cross-examination regarding her testimony; and (3) the State's discovery provided reference to the medical examination and thus there was no withholding of evidence in violation of Supreme Court Rule 412.

Supreme Court Rule 412 provides, in relevant part, that the State, upon written motion of defense counsel, shall disclose any reports, including results of medical examinations. (87 Ill. 2d R. 412(a)(iv).) Rule 412 further provides that the State has the duty to disclose to defense counsel all evidence which tends to negate the guilt of the defendant or which might be used in mitigation of punishment. 87 Ill. 2d R. 412(c).

The United States Supreme Court has developed and refined the test to be applied in determining whether there has been a violation of due process arising from the alleged suppression of evidence. (See *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194; *Moore v. Illinois* (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562; *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.) Under this test, a defendant alleging a denial of due process must show: (1) a suppression by the prosecution of evidence which actually exists which is in control of the prosecutor and is either highly probative of the defendant's innocence or there has been request for production made by the defendants; (2) the evidence is favorable to the defense; and (3) the evidence is material to the defendant's case. The Illinois courts have adopted and continue to apply this test. See, *e.g., People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104; *People v. Bivins* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044.

Upon review the court will look to the entire record to determine if rejected evidence could have reasonably affected the verdict. (*People v. Wolff* (1960), 19 Ill. 2d 318, 167 N.E.2d 197, *cert. denied* (1960), 364 U.S. 874, 5 L. Ed. 2d 96, 81 S. Ct. 119.) Where alleged

newly discovered evidence was discoverable prior to trial by the exercise of ordinary diligence, or where no showing is made that the newly discovered evidence is so conclusive that it would probably lead to a different result on new trial motions, a motion for a new trial should not be granted. (*Pritchett v. Steinker Trucking Co.* (1968), 40 Ill. 2d 510, 240 N.E.2d 684.) A disposition of a motion for a new trial is a matter largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse. (40 Ill. 2d 510, 240 N.E.2d 684.) In the case at hand, the alleged medical examination was not in possession of the prosecution. The only mention of any medical examination was a cursory reference in a police report. Evidence indicated that although the prosecution was aware of the medical examination, it had never actually investigated the results of the examination. The prosecution made no reference to the examination at trial.

Compliance with Supreme Court Rule 412 further requires that the defendant make a specific request for any evidence he seeks to discover. In the State's initial discovery, which was tendered to the defense, reference was made in a police report that the victim was instructed to go to the emergency room for a medical examination after the incident occurred. The defense, however, never requested the medical examination or any information regarding the victim's physical condition be turned over to the defense.

Since the prosecution was not in possession of the medical examination, made no reference to the examination at trial, did not receive a specific request for discovery of the examination, and had complied with discovery in all other respects, there was no violation of Rule 412.

Affirmed.

WEBBER and GREEN, JJ., concur.