THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN D. HELTON, Defendant-Appellant.

Fourth District   No. 4—89—0376

Opinion filed March 22, 1990.

Daniel D. Yuhas and M. Jeffrey Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn W. Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

After a jury trial defendant was convicted of aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1).) Defendant argues (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied a fair trial by comments in opening statement and testimony concerning an exhibit which was not admitted into evidence; (3) he was denied an opportunity to conduct an effective cross-examination of the victim; (4) the trial court committed plain error in admitting evidence of a prior conviction; and (5) the trial court abused its discretion in sentencing. Defendant also argues he is entitled to 186 days' credit against his sentence.

We affirm and remand for proper sentence credit.

On October 5, 1988, defendant was charged with one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)) and one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(c)(1)(i)). During opening statement, the assistant State's Attorney noted the victim's mother found bloody underwear belonging to the victim soon after defendant moved out of their home.

At trial, Sherri Diane Condardy testified that she lives with her six-year-old daughter, M.J., and her three-year-old son, F.J. Between August 15, 1988, and August 26, 1988, defendant lived with them. She had known defendant for 20 years. He is 37 years old. No one else was staying in her apartment at that time. Defendant watched M.J. and F.J. while Condardy worked. Condardy noticed a change in M.J.'s behavior after defendant moved in. She became angry, was difficult when getting dressed, did not want Condardy to bathe her, did not want Condardy to enter the bathroom while she was in the room, and became shy. Around the time defendant moved out, Condardy looked at M.J.'s vaginal area. M.J. fought Condardy, turning away from her and facing the wall. Condardy took M.J. to a physician, who examined her on September 13, 1989. After the examination, Condardy contacted the police.

Condardy then stated that after defendant moved out, she found four pairs of M.J.'s panties with bloodstains on them. Condardy began to cry, and the trial judge ordered a recess so she could compose herself. Condardy then testified that prior to the time defendant lived with them, M.J. put her panties in her laundry basket. Condardy

found the stained panties under a pile of clothes in M.J.'s bedroom.

M.J. stated she was seven years old, and her brother was three. Before school started, defendant lived with them. He baby-sat while her mother worked. While defendant was baby-sitting, M.J. stated "he touched me in my private parts." M.J. drew a circle around the vaginal area on a girl picture. Although M.J. could not remember how many times defendant had touched her vaginal area, she stated he did so on more than one occasion. M.J. could not remember whether she was dressed when defendant touched her. She stated it hurt when he touched her.

Pam Waterman, an investigator with the Department of Children and Family Services, interviewed M.J. Diane Beggs, a police officer, was present. M.J. stated defendant had touched her vaginal area with his fingers. M.J. could not remember how many times defendant had touched her. M.J. stated defendant's fingers touched her skin. On cross-examination, Waterman testified M.J. could not remember dates, times of day, or what she and defendant were wearing. Beggs' testimony about M.J.'s statements was consistent with Waterman's testimony.

Victor Wilson, M.J.'s pediatrician, testified that on September 2, 1988, he saw M.J. at his office. He attempted to examine her abdomen and genital area. M.J. was very resistant to disrobing, being touched, and lying down. On a subsequent day, he attempted to examine her again, but was unsuccessful. On September 13, 1988, he admitted M.J. to the hospital and placed her under general anesthesia.

Wilson observed the exterior of M.J.'s genitals appeared normal. There was no bruising, tearing, or significant trauma. Upon examining the inside of M.J.'s genitals, he found the vaginal opening was "abnormally large." A normal vaginal opening for a child of M.J.'s age is one-sixth to one-eighth inch. M.J.'s vaginal opening was one-half to three-fourths of an inch. The rim of the hymen was thickened and irregularly rolled, rather than thin. Wilson also found a tear in the hymen, which had healed, indicating the injury was approximately 10 days old. The inside of the vagina showed small blood vessel lesions. Wilson stated these lesions were typical of Osler-Webber-Rendu syndrome, from which M.J. suffers.

Wilson further stated that the syndrome does not affect intelligence, would not cause the enlargement of the vagina, and would not cause the tear in the hymen. The tear and enlargement of the vaginal opening could easily cause bleeding and would most likely cause pain. In Wilson's opinion, on more than one occasion, at least one of which was 10 days or more prior to the examination, M.J. had suffered a

vaginal penetration. Wilson stated the size of the object causing the injuries was "at least the size of an adult's finger or larger." Wilson formed an opinion that the penetration had occurred on more than one occasion.

On cross-examination, Wilson stated Osler-Webber-Rendu syndrome is an inherited disorder. It causes clots in blood vessels in moist tissues of the body, such as the mouth, respiratory tract, lungs, and vagina. The blood vessels can bleed spontaneously or with trauma. The clots within M.J.'s vagina could bleed spontaneously. Penetration of M.J.'s vagina could likely have occurred over a long period of time. However, his findings were consistent with a short time frame. A penetration could possibly have occurred less than 10 days before September 13, 1988.

On redirect examination, Wilson stated M.J. had spontaneous nosebleeds. He was not aware of any spontaneous vaginal bleeding. She would bleed easily if she suffered trauma.

The trial judge sustained defendant's objection to the admission of the panties. He stated he could not tell if the stains were blood, the minor had not testified she removed them, and no typing of the stain occurred. Therefore, the court found the panties were not relevant. The trial judge instructed the jury to completely disregard the exhibit and any testimony offered about the panties.

Virginia Helton, defendant's mother, testified in his behalf. She stated defendant lived with Condardy in August 1988. He moved back into her home on Wednesday, August 24, 1988.

The jury found defendant guilty of both counts. On August 7, 1989, the trial court sentenced defendant to 15 years' imprisonment on the aggravated criminal sexual assault conviction. The court vacated the judgment of guilty on the aggravated criminal sexual abuse conviction, finding both offenses arose out of the same act.

Defendant argues he was not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault because M.J. did not testify that penetration occurred, the fact that touching caused pain does not indicate penetration occurred, and the medical evidence of penetration is "insignificant" because it does not corroborate the victim's testimony.

Section 12—14(b)(1) states that a person commits aggravated criminal sexual assault if he "was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1).) Penetration as applicable to the instant case is defined as any intrusion of any part of the body of one person into

the sex organ of another. (Ill. Rev. Stat. 1987, ch. 38, par. 12—12(f).) A conviction for aggravated criminal sexual assault when defendant testifies and denies the charge will be upheld where the complainant's testimony is clear and convincing or substantially corroborated by other evidence. (*People v. Harris* (1989), 187 Ill. App. 3d 832, 543 N.E.2d 859; *People v. Jones* (1988), 174 Ill. App. 3d 737, 528 N.E.2d 1363.) Corroborating evidentiary matters include eyewitness accounts, confessions or admissions, prompt reporting of the incident by the victim, or medical testimony which supports allegations of abuse. (*People v. Server* (1986), 148 Ill. App. 3d 888, 895, 499 N.E.2d 1019, 1024, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131; *People v. Morgan* (1986), 149 Ill. App. 3d 733, 738, 500 N.E.2d 1121, 1125.) When evidence of penetration is presented at trial, the question of whether penetration occurred is one of fact for the jury to determine. (*Harris*, 187 Ill. App. 3d 832, 543 N.E.2d 859; *Morgan*, 149 Ill. App. 3d 733, 500 N.E.2d 1121.) A reviewing court will only set aside a guilty verdict when the evidence is so palpably contrary to the finding or so unreasonable, improbable, or unsatisfactory as to leave a reasonable doubt about the accused's guilt. *Morgan*, 149 Ill. App. 3d 733, 500 N.E.2d 1121.

M.J. testified defendant touched her "in" her private parts on more than one occasion and it hurt. Wilson testified penetration of M.J.'s vagina with an object at least as large as an adult finger had occurred on at least one occasion. Wilson also stated penetration had probably occurred on more than one occasion. Defendant's contention that pain does not indicate penetration because of M.J.'s medical condition is not based on the record. Wilson did not state and was not asked whether the blood disorder caused pain. Therefore, M.J.'s indication that it hurt when defendant touched her vagina may be viewed as a statement that penetration had occurred. However, we need not decide whether M.J.'s testimony by itself may sustain the conviction. Here, extensive medical testimony corroborated the allegation of penetration. Defendant was proved guilty beyond a reasonable doubt.

In opening statement, the prosecutor commented that Condardy had found the victim's bloodstained panties after defendant moved out. Subsequently, Condardy testified she found the panties in an unusual place. However, the exhibit was not admitted as the State's evidence had not connected it to the offense. All of Condardy's testimony concerning the panties was stricken. The court advised the jury to disregard the testimony.

Defendant argues that the prosecutor's reference in opening statement to the bloodstained panties, which were not admitted into

evidence, and the subsequent testimony denied him a fair trial. We do not agree. The purpose of opening statement is to inform the trier of fact of what the evidence will show. It is improper for a prosecutor to comment on what evidence will be introduced and then fail to produce the evidence. (*People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254.) In order to constitute reversible error, remarks by counsel must be such as to give reasonable grounds for believing the jury was prejudiced by the remarks and its verdict was affected. *People v. Talley* (1987), 152 Ill. App. 3d 971, 978, 504 N.E.2d 1318, 1322.

Here, defendant does not allege intentional prosecutorial misconduct. Additionally, all of the cases relied upon by the defendant involve cumulative error situations. In none was the impropriety in opening statement independently sufficient for reversal. See *People v. Weller* (1970), 123 Ill. App. 2d 421, 258 N.E.2d 806; *People v. Weinger* (1981), 101 Ill. App. 3d 857, 428 N.E.2d 924; *People v. Rogers* (1976), 42 Ill. App. 3d 499, 356 N.E.2d 413.

■ The issue presented to this court is whether the remarks prejudiced the jury and affected its verdict. (*Talley*, 152 Ill. App. 3d at 978, 504 N.E.2d at 1322.) Defendant argues the reference coupled with the effect of the stricken testimony denied him a fair trial. However, defendant does not argue the trial court abused its discretion in denying the motion for a mistrial based upon Condardy's testimony. Generally, errors corrected by the trial court with instructions to the jury do not require a reversal. This is based upon the premise that juries follow instructions. We note the exception to this rule is found in situations where no jury could disregard the inadmissible evidence. (*People v. Sandoval* (1990), 135 Ill. 2d 159, 192-93.) In the instant case, Wilson provided uncontradicted expert opinion that penetration had occurred. Additionally, Wilson stated that penetration had most probably occurred on more than one occasion. M.J.'s physical condition supported a finding that penetration had occurred. Therefore, we find the verdict was not affected by the improper opening statement, even when coupled with any residual impact of the stricken testimony.

Defendant next argues M.J.'s inability to remember the details of her prior statement to Waterman and Beggs deprived him of an opportunity for effective cross-examination. Defendant maintains his sixth amendment right to confront witnesses was infringed upon. (U.S. Const., amend. VI.) Defendant did not object at trial that M.J.'s inability to recall the substance of the prior conversation deprived him of an opportunity for cross-examination. He did not raise this issue in his post-trial motion or supplemental post-trial motion.

■ Defendant has waived review of this issue. In a criminal case,

both the trial objection and a written post-trial motion raising the issue are necessary to preserve an error for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 185-91, 522 N.E.2d 1124, 1129-32, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274; *People v. Crowder* (1988), 174 Ill. App. 3d 939, 529 N.E.2d 83.) Waiver applies to constitutional issues as well as nonconstitutional issues. (*People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467.) Plain error or errors affecting substantial rights may be addressed although they were not raised in the trial court. (107 Ill. 2d R. 615(a); *People v. Precup* (1978), 73 Ill. 2d 7, 382 N.E.2d 227.) However, review of issues pursuant to Rule 615(a) only occurs where the evidence is closely balanced or the error denied the defendant a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.

■ On the merits, defendant was not denied his right to cross-examine M.J. The sixth amendment right to confront witnesses is a fundamental one, which affords a defendant the opportunity to test the truth of his accuser's assertions. (*People v. Dixon* (1982), 105 Ill. App. 3d 340, 434 N.E.2d 369.) A gap in a witness' memory concerning the content of a prior statement does not necessarily preclude an opportunity for effective cross-examination. *People v. Flores* (1989), 128 Ill. 2d 66, 538 N.E.2d 481; see generally *United States v. Owens* (1988), 484 U.S. 554, 98 L. Ed. 2d 951, 108 S. Ct. 838.

Defendant next argues the trial court committed plain error in denying his motion *in limine* to preclude use of a prior Arizona conviction for impeachment. In the alternative, defendant contends the trial court abused its discretion in balancing the probative value of prior conviction with its prejudicial effect. In *People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695, 698, the Illinois Supreme Court adopted proposed Federal Rule of Evidence 609 (Fed. R. Evid. 609). The rule stated:

> "(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere*, is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.
>
> (b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness

from confinement, whichever is the later date." *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698.

In *People v. Yost* (1980), 78 Ill. 2d 292, 399 N.E.2d 1283, the court stated the proposed rule as adopted in *Montgomery*, and not subsequent revisions of it, would be utilized by Illinois courts. Defendant's prior convictions were based upon pleas of *nolo contendere*.

However, defendant has waived review of this issue. In *Luce v. United States* (1984), 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460, the Supreme Court held that in order to preserve appellate review of a denial of a motion *in limine*, the defendant must testify at trial. Luce elected not to testify after the trial court denied his motion to preclude impeachment by use of a prior felony conviction. The Supreme Court noted that the harm caused by the *in limine* ruling is "wholly speculative" where a defendant does not testify. See also *People v. Redman* (1986), 141 Ill. App. 3d 691, 490 N.E.2d 958.

Defendant has also waived review of the propriety of the denial of the motion because the prior conviction was based on a plea of *nolo contendere*. Although *Montgomery* adopted the version of the Federal rule which excluded use of convictions based upon a *nolo contendere* plea, defendant did not object to use of the prior conviction on this ground. Specific objections at trial level waive all other grounds for objection. (*People v. Barrios* (1986), 114 Ill. 2d 265, 500 N.E.2d 415.) In *People v. Alexander* (1989), 184 Ill. App. 3d 855, 540 N.E.2d 949, the court ruled the defendant waived review of the propriety of using a conviction based upon a *nolo contendere* plea for impeachment purposes. Defendant had failed to raise the objection in the trial court. We find *Alexander* persuasive and follow it. We note that the trial court did balance the prejudicial effect of the testimony with its probative value.

The trial court sentenced defendant to 15 years' imprisonment. Defendant's presentence report indicates he was convicted of burglary in 1969 and was placed on two years' probation. In 1980, he was convicted of two counts of sexual conduct with a minor and sentenced to two 7-year terms of imprisonment. Defendant was also convicted of a misdemeanor offense of contributing to the delinquency of a minor. During the sentencing hearing, defendant denied commission of the instant offense. He also stated the girls in Arizona had initiated the conduct leading to the offenses.

Absent an abuse of discretion, the trial court's sentencing determination should not be altered upon review. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) The trial court is in the best

position to assess the proper sentence based upon the particular circumstances of the case. (*Ward*, 113 Ill. 2d at 525-26, 499 N.E.2d at 425; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Jones* (1988), 172 Ill. App. 3d 1048, 527 N.E.2d 521.) Before reversing a sentence imposed by the trial court, it must be clearly evident that the sentence was improperly imposed. In making this determination, the reviewing court should not focus on a few words or statements by the trial court. Instead, the determination of the propriety of the sentence should be based upon consideration of the entire record. (*Ward*, 113 Ill. 2d at 526-27, 499 N.E.2d at 425-26.) Aggravated criminal sexual assault is a Class X felony. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(c).) As such, a defendant may be sentenced to not less than six years nor more than 30 years. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).

Defendant relies extensively on *People v. Harris* (1989), 187 Ill. App. 3d 832, 543 N.E.2d 859, and cases cited within it in arguing his sentence is excessive. In *Harris*, defendant's 25-year sentence was "cautiously" found to be an abuse of discretion. The *Harris* court noted the trial court considered all factors in aggravation and mitigation prior to imposing sentence. The court also noted that the sentence was within the statutory range. However, the reviewing court then reweighed those factors. Reweighing of sentencing factors has been repeatedly disapproved of by the Illinois Supreme Court. We decline to do so in the instant case.

As a matter of substance, Harris was a first offender, had an alcohol problem, his alcohol problem contributed to the offense, and he supported his family. None of those mitigating factors are present in the instant case. Defendant also relies upon cases cited by *Harris* as illustrating the excessiveness of his sentence. Sentencing was not at issue in any of those cases. (See *People v. Watson* (1989), 178 Ill. App. 3d 796, 533 N.E.2d 1011; *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 518 N.E.2d 669; *People v. Fisher* (1988), 169 Ill. App. 3d 785, 523 N.E.2d 368; *People v. Bayer* (1987), 160 Ill. App. 3d 218, 513 N.E.2d 457; *People v. McCoy* (1987), 156 Ill. App. 3d 194, 509 N.E.2d 567.) Therefore, no discussion of the factors relevant to a sentencing determination occurred in those cases. The cases, thus, are not authority for the proposition that defendant's sentence is excessive.

■ The trial court properly considered defendant's lack of rehabilitative potential, prior offenses, attitude toward his past convictions, and the need to protect the public from this type of offense. The court's statement that this was defendant's third Class X offense was erroneous. However, the error did not affect the sentence.

Defendant was sentenced to 15 years' imprisonment. The maximum sentence was 30 years, and the State requested a 25-year sentence. In light of the entire record, no abuse of discretion occurred in sentencing. See *Ward*, 113 Ill. 2d at 525-26, 499 N.E.2d at 425-26.

■ However, we find defendant is entitled to 186 days' credit against his sentence. He was arrested on October 4, 1988. Bond was set the next day. However, defendant did not post bond. He was sentenced on April 7, 1989. The court did not credit his sentence. The judgment on sentence also does not reflect any credit for time served. A defendant is entitled to credit against his sentence for all time served in custody on the offense for which he is sentenced. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—7; *People v. Scheib* (1979), 76 Ill. 2d 244, 390 N.E.2d 872.) Thus, defendant is entitled to credit against his sentence.

For the above reasons, we affirm defendant's conviction and sentence and remand for entry of 186 days' credit for time served.

Affirmed and remanded with directions.

LUND and SPITZ, JJ., concur.