SECOND DIVISION
October 25, 2010

No. 1-08-2551

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 05 CR 17358 |
| | ) | |
| STEPHEN McCOY, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Defendant Stephen McCoy appeals from his conviction for attempted first-degree murder and two counts of aggravated battery with a firearm. On appeal, he argues: (1) the court failed to conduct a proper *voir dire* of the jury in violation of Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431, eff. May 1, 2007); and (2) the court improperly coerced the jury's verdict by warning the jury that it would be sequestered. For the following reasons, we affirm defendant's conviction.

Defendant was charged by indictment with two counts of attempted first-degree murder under sections 8-4 and 9-1(a)(1) of the Criminal Code of 1961 (Code) (720 ILCS 5/8-4, 9-1(a)(1) (West 2004)) and two counts of aggravated battery with a firearm under section 12-4.2(a)(1) of the Code (720 ILCS 5/12-4.2(a)(1) (West 2004)) in the shooting of Ernest Anderson and Curtis Chatman. The testimony at trial presented conflicting accounts of the events leading to the shooting of Anderson and Chatman. However, it is undisputed that defendant shot the two men.

The State's theory of the case was that defendant saw Anderson standing on the sidewalk, called out his name, and then shot him and Chatman, who was standing nearby. Defendant's theory at trial was that he shot the two men in self-defense after Anderson displayed a weapon. Defendant also claimed that he had reason to believe that Anderson was dangerous because defendant's sister testified against Anderson in a murder trial eight years earlier.

Defendant does not challenge the evidence presented at trial and only raises on appeal two procedural improprieties that he claims resulted in a biased jury and a coerced verdict. Thus, our recitation of the facts of this case is limited to those claimed procedural improprieties. During *voir dire*, the court made the following remarks to the venire:

"I'm going to ask a series of questions. If your answer to any of these questions is yes, *** please raise your hand, and I will follow up on [*sic*] later time.

***

A defendant is presumed innocent until the jury during deliberations determines from all of the evidence that the defendant is guilty beyond a reasonable doubt. Does anyone here have a problem with that presumption? Again, I see no hands raised. The collective answer is no.

The State has the burden of proving the defendant guilty beyond a reasonable doubt in a criminal case. Does anyone disagree with requiring the State to meet that burden? Again, no hands are raised. The collective answer is no.

The defendant does not have to present any evidence at all in the case. The

defendant may rely upon the presumption of innocence. Does anyone have any difficulty with extending the defendant that presumption throughout the trial? Again, no hands are raised. The collective answer is no.

The defendant does not have to testify. Is there anyone here who would hold it against the defendant if he chose not to testify?"

Two potential jurors raised their hands after the last question was presented. The court noted their responses and asked them additional questions about their responses later in the *voir dire*. Both of the objectors were subsequently dismissed. A panel of 12 jurors was subsequently selected and sworn.

After the trial and the conclusion of closing arguments, the court instructed the jury and sent the jurors to deliberate. They began their deliberations at approximately 1 p.m. At approximately 2:40 p.m., the jury sent a note to the court asking for a "legal definition of intent to kill an individual." The court and parties formulated a response and submitted it to the jury. At approximately 4:20 p.m., the jury sent another note to the court asking for transcripts of the testimony of defendant, Anderson, and Chatman. The court and parties agreed to send the transcripts to the jury. At approximately 8 p.m., the court called the jury into the courtroom and the following colloquy occurred:

"THE COURT: Let the record reflect we are in open court with the 12 jurors, defense attorney, the State's Attorney, and [defendant]. The time is now about 8:00 o'clock [*sic*]. Ms. Dohl, are you the foreperson?

FOREPERSON DOHL: Here.

THE COURT: The jury is still deliberating on their verdict?

FOREPERSON DOHL: Yes.

THE COURT: It's 8:00 o'clock [*sic*] now.  You've been deliberating for about seven hours.  What I'm going to do is I'm going to call it quits for the night.  So what we're going to do is my sheriffs have made arrangements, we're going to take you to a hotel and you'll be able to spend the night in the hotel and you will come back and deliberate in the morning.

[FOREPERSON] DOHL: Can you give us another half hour?

JURORS: We're close.

A JUROR: If we're not able to leave to go home, I have no way to contact a number of folks I need to contact before the morning.

THE COURT: All right.  What I'm going to do, I'm going to bring you back in the jury room for a second.  I'll bring you back out in about two minutes, okay?  Go with the sheriff."

The court and the parties then discussed outside the presence of the jury how they would proceed:

"THE COURT: My inclination is just to sequester this jury right now and I'd like to hear what everybody thinks about that.  I mean I can let them continue to deliberate, it doesn't really matter to me.  I don't want to force a verdict on this matter.  They are saying they're close.  What does each side – each side, do you want to say anything?  What's your position on this?

- 4 -

MR. MORASK [defense attorney]: I would ask they be sequestered at this time, Judge. I mean that whenever a jury is told that potentially they're going to be staying, there's always the concern regarding whether a verdict is going to come back because they're told that they're going to stay or not. And I know that's not the intention of this court, but I would ask that they be sequestered at this time.

MS. CHEVLIN [Assistant State's Attorney]: Judge, I would actually ask that they be allowed at least some time. It wasn't just one person that said that. They all, several people volunteered that they were close without any prompting by the court. I certainly don't think they should be given an extended amount of time.

THE COURT: They're not going to be given an extended amount of time. I don't want to tell them if they don't come back in fifteen minutes I'm going to sequester them because then you know what's going to happen."

The court then called the jury back into the courtroom and said:

"Okay. Ladies and gentlemen, I'll give you some time to continue to deliberate. I'm not going to give you a set time, and the next time I pull you out, you will be sequestered if there's not a verdict. Understand that? I'm not telling you what you need to do. This is a fact of life. I understand that it will be inconvenient to sequester you, but if it is the right thing to do, it is the right thing to do. Do you understand the importance of the decision you're making? Okay,

1-08-2551

you can return to deliberate."

At approximately 8:30 p.m., the jury returned its verdict, finding defendant guilty of the attempted murder of Anderson, guilty of the aggravated battery of Anderson and Chatman, and not guilty of the attempted murder of Chatman. After merging the convictions for the attempted murder and aggravated battery of Anderson, the court sentenced defendant to 15 years' imprisonment for attempted murder and 10 years' imprisonment for the aggravated battery of Chatman, to be served consecutively.

On appeal, defendant first argues that he was denied a fair trial by an impartial jury because the court failed to properly conduct the *voir dire* in accordance with Supreme Court Rule 431(b) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 431, eff. May 1, 2007). However, defendant has forfeited the argument. It is well established that in order to preserve an issue for review, a defendant must make a contemporaneous objection at trial and raise the issue in his posttrial motion. People v. Enoch, 122 Ill. 2d 176, 186 (1988). Here, as the State correctly notes, defendant did neither; thus, the argument is forfeited.

Ordinarily, we may review an otherwise forfeited issue for plain error under Supreme Court Rule 615(a), which permits review of unpreserved errors when "(1) a clear or obvious error occur[red] and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occur[red] that is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." People v. Piatkowski, 225 Ill. 2d 551, 565 (2007); 134 Ill. 2d R. 615(a). Under both prongs of

- 6 -

the plain-error doctrine, the defendant bears the burden of persuasion. People v. Hillier, 237 Ill. 2d 539, 545 (2010). If the defendant fails to sustain his burden, we must honor the procedural default. Hillier, 237 Ill. 2d at 545.

Our supreme court has recently made clear that a defendant who fails to argue for plain error review "obviously cannot meet his burden of persuasion." Hillier, 237 Ill. 2d at 545. Specifically, "when a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review." Hillier, 237 Ill. 2d at 545-46.

Here, defendant failed to acknowledge that he forfeited the substantive issue and, consequently, failed to provide this court with a persuasive legal argument for excusing his procedural default. Rather, he argued that the circuit court's alleged failure to conduct *voir dire* in accordance with Rule 431(b) is reversable error not subject to a harmless error analysis under People v. Glasper, 234 Ill. 2d 173 (2009). He also cited cases issued subsequent to Glasper, noting that in those cases, this court "reversed without weighing the trial evidence" and "refus[ed] to consider [the] State's argument that [the] evidence was overwhelming." See People v. Graham, 393 Ill. App. 3d 268 (2009); People v. Wilmington, 394 Ill. App. 3d 567 (2009); People v. Arredondo, 394 Ill. App. 3d 944 (2009). He concluded his analysis by arguing that "[e]ven under a harmless-error test, therefore, this Court should reverse." Although he used the phrase "plain error" to introduce his argument, the argument itself did not provide the proper legal framework under which we must analyze a claim of plain error.[1]

_____

[1] "When a defendant has forfeited appellate review of an issue, the reviewing court will consider only plain-error. Harmless-error analysis is conducted when a defendant has preserved an issue for review." People v. Thompson, No. 109033, slip op. at 10 (October 21, 2010), quoting People v.

Moreover, in response to the State's contention that he forfeited plain error review, defendant's reply brief merely contains two conclusory assertions that "[this case] was close for plain-error purposes," and that he "has already addressed the second prong," presumably in reference to the aforementioned harmless error discussion. Although we may review plain error arguments raised in a reply brief (People v. Ramsey, No. 105942, slip op. at 38 (October 7, 2010)), such conclusory assertions as those contained in defendant's brief cannot be deemed adequate legal arguments sufficient to sustain defendant's burden of persuasion. Thus, defendant has forfeited plain error review of the court's administration of *voir dire* and we must honor the procedural default. See Hillier, 237 Ill. 2d at 545.

Defendant also argues on appeal that the court "hastened" the jury's verdict when it informed the jury that it would be sequestered but then permitted the jury to continue deliberating to verdict. Because the jury then returned its verdict within a half-hour, defendant contends that the sequestration announcement was coercive.

Defendant contends that this issue should be reviewed under a *de novo* standard rather than an abuse of discretion standard because where the court is alleged to have "improperly influenced a jury's verdict ***, no factual findings exist from which to give deference." Although defendant cites several cases in support of that proposition, they are all inapposite and, in fact, undermine his contention. See People v. Marino, 414 Ill. 445 (1953); People v. Moriarity, 33 Ill. 2d 606 (1966); People v. Santucci, 24 Ill. 2d 93 (1962); People v. Parker, 223 Ill. 2d 494 (2006).

---

McLaurin, 235 Ill. 2d 478, 495 (2009).

Marino, Moriarity, and Santucci all involve situations in which the trial judge conducted biased examinations of witnesses in the presence of the jury, with the judge in one case openly expressing his disbelief of a witness's testimony (Marino, 414 Ill. at 451). In each of those cases, the supreme court concluded that the trial judge "abandoned his role of an impartial arbiter, and assumed the role of prosecutor and jury to an extreme degree" (Moriarity, 33 Ill. 2d at 613), which "is very apt to influence the jury in arriving at its verdict" (Marino, 414 Ill. at 451). As a result, the judges were found to have abused their "wide discretion in the conduct of a trial." Marino, 414 Ill. at 450. Thus, to the extent that the cases cited by defendant are at all relevant, they apply an abuse of discretion standard of review. Additionally, Parker has no relevance here because it examined the substance of the instructions conveyed to the jury, which is not at issue.

Here, defendant alleges that the court coerced a guilty verdict from the jurors by permitting them to deliberate after they had been informed that they would be sequestered. We have previously determined that such an issue will be reviewed for an abuse of discretion. People v. Morales, 281 Ill. App. 3d 695, 705 (1996); see also People v. Harris, 294 Ill. App. 3d 561, 568 (1998) ("[t]he determinations of what length of time is reasonable to permit a jury to deliberate *** and whether to sequester a jury that has more than once indicated that it cannot reach a verdict are matters within the discretion of the trial court"); People v. Daily, 41 Ill. 2d 116, 121 (1968) ("[t]he length of jury deliberations is a matter which rests within the sound discretion of the trial court and its judgment in this regard will not be disturbed unless this discretion has been clearly abused").

The test for determining whether the trial court's comments to the jury were improper in

this context is whether, under the totality of the circumstances, the language used by the court actually interfered with the jury's deliberations and coerced a guilty verdict. People v. Fields, 285 Ill. App. 3d 1020, 1029 (1996); People v. Defyn, 222 Ill. App. 3d 504, 515-16 (1991). However, "[s]imply informing the jury that it will be sequestered is not necessarily coercive in nature." Defyn, 222 Ill. App. 3d at 515. Additionally, although "extremely brief" deliberations after a reference to sequestration may invite an inference that the reference coerced the jury to render its verdict, the subsequent time of deliberation is not by itself a conclusive indication of coercion. Fields, 285 Ill. App. 3d at 1029; People v. King, 252 Ill. App. 3d 334, 347 (1993).

We have examined cases similar to this one in the past. For example, in Defyn, the court called a deliberating jury into open court after it had been in the jury room for "some time." Defyn, 222 Ill. App. 3d at 515. There was no indication that the jury was deadlocked, but the court informed the jury that it would be sequestered and taken to a hotel for the night due to the late hour. Defyn, 222 Ill. App. 3d at 515. However, the jury was permitted to continue deliberating for the next "10 or 15 minutes" until the bus arrived to take them to the hotel. Defyn, 222 Ill. App. 3d at 515. In the time before the bus arrived, the jury returned a guilty verdict. Defyn, 222 Ill. App. 3d at 516. We said that although the record did not reveal exactly how long the jury's subsequent deliberation lasted, there was no basis upon which to infer that the announcement of sequestration coerced the verdict. Defyn, 222 Ill. App. 3d at 516. The court's language was not coercive but, rather, informed the jurors that they need not reach a verdict that night. Defyn, 222 Ill. App. 3d at 516. Our supreme court has recognized that informing a jury that hotel arrangements would be made "in about half an hour" removed, rather than created,

pressure on the jury to reach a verdict because they need not have reached an immediate decision. People v. Steidl, 142 Ill. 2d 204, 231-32 (1991) (examining the existence of prejudice to the defendant under a different procedural posture), citing People v. Baggett, 115 Ill. App. 3d 924, 930 (1983) ("[i]nforming a jury that it might be sequestered cannot be considered coercive").

Additionally, in Fields, the jury requested that it be allowed to begin deliberations at 8:26 p.m. after closing arguments, rather than wait until morning. Fields, 285 Ill. App. 3d at 1026. At 10:45 p.m., on the court's order, the sheriff informed the jurors that they would be sequestered overnight and that their transportation was waiting. Fields, 285 Ill. App. 3d at 1026. The jurors then requested an additional "10, 15, or 20 minutes" to continue deliberating, which the sheriff communicated to the court. Fields, 285 Ill. App. 3d at 1026. While defense counsel was arguing against granting the jury additional time, the jury notified the court that it had reached a verdict. Fields, 285 Ill. App. 3d at 1026. In Fields, we recognized that coercion was "a highly subjective concept" and accordingly focused our analysis on the specific question of "whether the challenged comments imposed such pressure on the minority jurors that it caused them to defer to the conclusions of the majority for the purpose of expediting a verdict." Fields, 285 Ill. App. 3d at 1029. In that vein, and in consideration of the totality of the circumstances, we concluded that there was no indication that a minority of jurors were under pressure to change their verdicts or that the jury was even deadlocked. Fields, 285 Ill. App. 3d at 1030. Nor had the jury been given a deadline to decide the case. Fields, 285 Ill. App. 3d at 1030. Rather, the jury itself sought a brief amount of additional time to conclude its deliberations and returned a verdict in less time than it had requested. Fields, 285 Ill. App. 3d at 1030. Therefore, we could not say that the

jury's verdict was coerced. Fields, 285 Ill. App. 3d at 1030.

Similarly, in this case, considering the totality of the circumstances, there is no indication that the court's sequestration announcement actually interfered with the jury's deliberations or that a minority of jurors were being pressured to change their verdicts. The court called the jurors into open court and notified them that they would be sequestered for the evening because it was late. As in Fields, a number of jurors volunteered that they were close to reaching a verdict and requested additional time to conclude their deliberations. None of the other jurors interjected to say that they were in fact deadlocked or that they were having difficulty in their deliberations. The jurors knew that they were close to a verdict when they were called into court and agreed among themselves that they only needed a short amount of time to finish their deliberations. Although defendant correctly notes that the length of the subsequent deliberation can invite an inference of coercion (People v. Friedman, 144 Ill. App. 3d 895, 903 (1986)), it is equally clear that the span of time does not conclusively indicate that their verdict was coerced especially where, as here, the jurors volunteered that they were close to reaching a verdict and only needed a half-hour to conclude their deliberations. See Defyn, 222 Ill. App. 3d at 515; Fields, 285 Ill. App. 3d at 1029. Taken together, we cannot say that the court's sequestration announcement coerced the verdict.

Moreover, these jurors appeared to thoroughly consider the evidence and the charges against defendant in arriving at their verdict. They requested and reviewed the trial testimony of defendant, Anderson, and Chatman to understand the course of events. They specifically considered the legal definition of "intent to kill," an element of attempted murder, and ultimately

determined that defendant was not guilty of the attempted murder of Chatman. The evidence in this case permits the jury's apparent conclusion that defendant targeted Anderson by calling Anderson's name before shooting him, which demonstrates an intent to kill him, whereas there was no allegation that defendant similarly targeted Chatman before shooting him. Rather than being a "split verdict neither side had sought," which had the "strong flavor of compromise," as defendant argues, these circumstances demonstrate that the jurors understood their duty and had nearly completed their deliberations at the time that they learned of the possible sequestration.

Although all of the cases defendant cites to support his argument are distinguishable, Friedman is the one case that involves the same legal issue we are asked to evaluate here. However, in Friedman, the only factor that the court considered in determining whether coercion occurred was how long the jury deliberated after receiving the sequestration announcement. In Friedman, the court called the jury into court to respond to the jury's inquiry about a legal concept and informed the jury, "as long as [it was] out [t]here," that it would be sequestered in about 45 minutes. The jury deliberated another five minutes before rendering a guilty verdict. In that case, it was clear that the jury could not have given due consideration to the newly-defined legal concept in five minutes and, therefore, its verdict must have been coerced by the sequestration announcement. Friedman, 144 Ill. App. 3d at 903. In this case, as we have stated, the jurors knew that they were close to a verdict when the court called them out to ascertain the status of their deliberations.

People v. Branch was a "unique" case that involved an extreme example of a court's improper comments affecting a jury's verdict. People v. Branch, 123 Ill. App. 3d 245, 251

(1984). In that case, the focus of our opinion was on the court's offensive remarks aimed at "intimidating" one holdout juror into changing his verdict. The jurors in Branch sent a note to the court indicating that they were deadlocked at 11 to 1 and that the holdout juror " 'could not vote guilty because they [*sic*] do not want anyone to go to jail.' " Branch, 123 Ill. App. 3d at 250. The court called the jurors into the courtroom and told them that the holdout juror was responsible for creating a "dilemma" but the court would nevertheless sequester them and not " 'cut this jury short because of the dilemma *** or the impasse that has been caused.' " Branch, 123 Ill. App. 3d at 250. Moreover, the court declared that the holdout juror " 'should not have received jury service' " because he was not following the jury instructions. Branch, 123 Ill. App. 3d at 250. Furthermore, the court neglected to inform the jury that in a deadlock situation, jurors need not feel pressure to " 'heed the majority,' " as prescribed by People v. Prim, 53 Ill. 2d 62 (1972). Branch, 123 Ill. App. 3d at 252. The jury deliberated another 10 minutes before returning a guilty verdict. We held that the court's remarks *in toto* "intimidat[ed] the juror into changing his vote by implying that his refusal to defer to the majority position somehow should have disqualified him from jury service." Branch, 123 Ill. App. 3d at 251-52. The facts of this case are not nearly so egregious.

Finally, the holding in People v. Ross addressed the fact that the court communicated with the jury without defense counsel present, which was a violation of the defendant's "constitutional right to a public trial, and to appear and participate in person and by counsel at all proceedings that involve his substantial rights." (Emphasis omitted.) Ross, 303 Ill. App. 3d 966, 975 (1999). Defendant cites Ross for the proposition that where a jury returns a verdict 15 minutes after

1-08-2551

receiving a sequestration announcement, its verdict is coerced. <u>Ross</u>, 303 Ill. App. 3d at 978. However, the passage cited by defendant was *dicta*; Ross was reversed because of the court's *ex parte* communication with the jury, which did not occur here.

Accordingly, for the foregoing reasons, we affirm defendant's conviction.

KARNEZIS and CUNNINGHAM, JJ., concur.