NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (4th) 180673-U

NO. 4-18-0673

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 25, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Edgar County |
| GARY R. PEAK, | ) | No. 15CF166 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Steven L. Garst, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding (1) defendant's claim of ineffective assistance of counsel for failing to investigate additional witnesses is better pursued through a postconviction petition, (2) the evidence was sufficient to prove defendant guilty beyond a reasonable doubt, (3) counsel's strategic choices during jury selection did not constitute ineffective assistance, (4) defendant's convictions for predatory criminal sexual assault and criminal sexual assault should not be reduced to the lesser-included charge of aggravated criminal sexual abuse, (5) the trial court did not err in sentencing defendant to consecutive terms of imprisonment, and (6) additional charges in the amended information should not be vacated.

¶ 2    In March 2018, a jury found defendant, Gary R. Peak, guilty of two counts of

criminal sexual assault, two counts of predatory criminal sexual assault of a child, and one count

of aggravated criminal sexual abuse.  In July 2018, the trial court sentenced defendant, in total, to

30 years' imprisonment.

¶ 3		Defendant appeals, arguing (1) he received ineffective assistance of trial counsel, (2) the State failed to prove him guilty beyond a reasonable doubt, (3) he was denied a fair and impartial jury trial, (4) his "conviction for predatory criminal sexual assault and aggravated criminal sexual assault should be reduced to the lesser-included offense of aggravated criminal sexual abuse," (5) the trial court erroneously imposed consecutive sentences, and (6) additional charges the State brought in an amended information filed on the second day of trial should be vacated. For the following reasons, we affirm the trial court's judgment.

¶ 4		I. BACKGROUND

¶ 5		In September 2015, the State charged defendant with (1) predatory criminal sexual assault of a child in that defendant was over the age of 17 and committed an act of sexual penetration with a victim, A.J., who was under the age of 13 (count I) (720 ILCS 5/11-1.40(a)(1) (West 2014)); (2) criminal sexual assault in that defendant committed an act of sexual penetration with A.J., a minor victim under the age of 18 and defendant was a family member (count II) (720 ILCS 5/11-1.20(a)(3) (West 2014)); and (3) aggravated criminal sexual abuse in that defendant committed an act of sexual conduct with A.J. who was under the age of 13 and defendant was over the age of 17 (count III) (720 ILCS 5/11-1.60(c)(1)(i) (West 2014)).

¶ 6		Before defendant's jury trial on March 20, 2018, defense counsel noted a motion for leave to file a motion for bill of particulars had been filed and the prosecutor clarified the specific charges. Defense counsel stated, "My understanding, there would be—there are two acts of penetration that he is alleging. So, he will be moving to amend the information, without objection." Further, counsel stated, "Whenever he can get around to filing that amended information is fine with us."

¶ 7        On March 21, 2018, the State filed an amended information charging defendant with (1) predatory criminal sexual assault of a child in that "defendant was 17 years of age or over and committed an act of sexual penetration, in that the [d]efendant placed his penis in the anus of A.J., who was under 13 years of age when the act was committed" (count I) (720 ILCS 5/11-1.40(a)(1) (West 2014)); (2) predatory criminal sexual assault of a child in that defendant committed an act of sexual penetration by placing his penis in A.J.'s mouth (count II) (720 ILCS 5/11-1.40(a)(1) (West 2014)); (3) criminal sexual assault in that defendant committed an act of sexual penetration by placing his penis in A.J.'s anus and defendant was a family member of the minor victim (count III) (720 ILCS 5/11-1.20(a)(3) (West 2014)); (4) criminal sexual assault in that defendant placed his penis in A.J.'s mouth and defendant was a family member of the minor victim (count IV) (720 ILCS 5/11-1.20(a)(3) (West 2014)); and (5) aggravated criminal sexual abuse in that defendant committed an act of sexual conduct with A.J. who was under 13 years of age and defendant was 17 years of age or older (count V) (720 ILCS 5/11-1.60(c)(1)(i) (West 2014)).

¶ 8                                A. *Voir Dire*

¶ 9        During *voir dire*, the trial court asked a prospective juror if she would wait until all the evidence was presented to make her final decision. The following exchange occurred:

        "PROSPECTIVE JUROR: I would hope so, but when you

        ask about crimes, no one was arrested or anything, but I was

        sexually molested in fourth and fifth grade but didn't remember it

        until I was—well, my daughter was eleven years old when I

        remembered it, so—and the guy was dead already. I checked. So,

        nobody was convicted.

THE COURT: Would that have any effect on your ability—

PROSPECTIVE JUROR: I—I don't know. I hope I am smart enough to be objective, but I don't know."

The court later asked the prospective juror if there was any reason she could not be a fair and impartial juror, and the prospective juror responded in the negative. Defense counsel asked the juror about a comment she made that "today's world is a lot different." The juror explained that children had cellular telephones today that allowed them access to "all the information they needed." The juror went on to explain, "What I was trying to say is if I would have remembered about what happened to me, the only way I would have been able to say I saw this, this, and this, is if I would have really seen it. In today's world, you can see everything without being there."

¶ 10 Another prospective juror was the victim of sexual assault when she was four years old. When defense counsel asked if she could put that experience aside and listen to the evidence, the juror responded, "Yes, each situation is different. My father-in-law is not—you know, I don't know this gentleman, at all. I think I can be impartial." Defense counsel neither asked to excuse these jurors for cause or utilize a peremptory challenge.

¶ 11                               B. Jury Trial

¶ 12 On March 20, 2018, defendant's jury trial began and the jury heard the following testimony relevant to the resolution of this appeal.

¶ 13                               1. *Paul Jackson*

¶ 14 Paul Jackson testified he lived in Terre Haute, Indiana, with his four children, including A.J. Jackson testified A.J. was born on December 12, 2001. On October 17, 2014, Jackson's son D.H. and A.J. knocked on his bedroom door. According to Jackson, A.J. was

distraught, was not making eye contact, and did not want to be there. D.H. told Jackson that A.J. wanted to disclose something "about a discussion we had had prior about good touch, bad touch." Jackson testified he had a conversation in August or September with his children about "good touch, bad touch, how adults should interact with children and what they should do if they were being abused." Jackson testified he had this conversation after observing A.J. kiss defendant goodbye on the lips when he picked her up for a visit. Jackson found this "odd" and stated, "I asked her why the kiss on the lips. And she replied, 'Because if we don't, he gets angry with us.' "

¶ 15 In October 2014, Jackson asked A.J. what happened, and she did not reply. Jackson asked if it would be easier if D.H. left the room. Once D.H. left, A.J. stated defendant touched her and gestured toward her breasts and genitals. According to Jackson, A.J. said she was naked when this occurred and defendant was wearing only a shirt. A.J. stated defendant made her touch him and indicated he made her touch his penis.

¶ 16 Jackson testified he called an abuse hotline and the Paris police. That same evening, Jackson took A.J. to the police station to give a statement. The following day, Jackson and A.J. returned to the Paris Police Department for a recorded interview. Jackson testified a medical exam with Noelle Cope was scheduled for several weeks out.

¶ 17 2. *Noelle Cope*

¶ 18 Noelle Cope, a nurse practitioner at Sarah Bush Lincoln Health Care Center, testified she specialized in pediatrics and sexual abuse of children. According to Cope, when she received a request for a medical examination of an abuse victim, her staff would collect information to determine how urgent the exam was. If the abuse occurred within the previous 24 to 48 hours, the child would be seen immediately or through the emergency department because

of the potential for relevant evidence. When Cope examined A.J., A.J. stated she was 12 years old. According to Cope, A.J. called her breasts "boobs," her vagina "privates," and her anus "butt." A.J. told Cope defendant touched her inappropriately. Cope asked A.J. how or where defendant touched her. Cope testified, "She responded that she had been touched in several different places, that he had touched her boobs with his hands. That she, that he had touched her private area with his hand and fingers. That he had touched her private area with his lips and his tongue. That she had touched, or she had put her mouth on his private area. That he had tried putting his private area, his boy private in her butt and had tried putting his boy private area in her private area."

¶ 19 Cope testified A.J. stated the abuse began when she was approximately five, six, or seven years old. A.J. stated the abuse stopped when she began her menstrual cycle around 10 or 11 years old. Cope testified A.J. had a normal physical examination consistent with the subjective history she took.

¶ 20                                    3. *Terry Rogers*

¶ 21 Terry Rogers, an investigator with the Paris Police Department, testified he participated in a recorded interview with A.J. and Department of Children and Family Services investigator Jeannie Faulkner. The court admitted the recorded interview into evidence. Rogers testified he also interviewed defendant in October 2014 and learned defendant was 41 years old at that time. Defendant told Rogers he had been with his wife, Shelly Peak, for 10 years. According to Rogers, defendant reported having a great relationship with A.J. although they had an argument prior to A.J.'s disclosure of the abuse.

¶ 22 The transcript of the recorded interview shows A.J. stated her stepfather touched her inappropriately. A.J. said the last time defendant touched her was in the bedroom he shared

with A.J.'s mother. According to A.J., defendant made her take off all her clothing while on the bed. A.J. stated defendant was partially clothed and touched her "boobs" and her "private area" with his hands and his "private parts." A.J. reported multiple instances when defendant inappropriately touched her genitals with his hands, penis, and mouth, and instances where defendant forced A.J. to touch his genitals with her mouth.

¶ 23                                                   4. *A.J.*

¶ 24          A.J. testified she was 16 years old at the time of the jury trial. When A.J. was about six years old, she lived with her mother, defendant, and her sister, I.J., and the family moved to Paris, Illinois. Approximately one month before the October 2014 disclosure, A.J.'s father noticed that defendant kissed her on the mouth when she left for visits. A.J.'s father asked about that, and A.J. said defendant would get mad if they did not kiss him on the mouth.

¶ 25          In October 2017, A.J. spoke with her brother D.H. about "something, sexual-abuse-related, was going on with him." A.J. thought she could help her brother because she had experienced sexual abuse for so long. According to A.J., D.H. "tricked me into telling him my secret instead of him telling me his." A.J. testified D.H. helped her go to her father's bedroom to disclose the abuse. When they arrived at her father's bedroom, A.J. cried and stared at the floor. A.J.'s father asked if she would like D.H. to leave the room, and she responded in the affirmative.

¶ 26          After her brother left the room, A.J.'s father kept asking her questions, but she was hesitant to disclose the abuse out of concern for her mother. Eventually A.J. told her father defendant touched her and gestured toward her body. A.J. told her father she was unclothed at the time and defendant had on a shirt but no pants. The evening A.J. disclosed the abuse, her

father took her to the Paris Police Department to make a statement. The next day, A.J. returned to the Paris Police Department for a recorded interview.

¶ 27    A.J. testified that on one occasion defendant attempted to have anal intercourse with her. According to A.J., defendant placed his penis on her anus and she felt a sharp pain that caused her to cry. A.J. testified defendant would come get her from her room when her mother went to work. A.J. wore a shirt and underwear and defendant wore just a shirt. He would fondle A.J.'s breasts, kiss her, and "rub his penis anywhere he felt like it." A.J. testified defendant had her perform oral sex, meaning "using [her] mouth on his penis." Defendant also caused contact between his mouth and A.J.'s vagina. According to A.J., the abuse stopped around the time she began her menstrual period.

¶ 28                    5. *Beverly Lawlyes*

¶ 29    Beverly Lawlyes testified her daughter Shelly was married to defendant. According to Lawlyes, her daughter was previously married to Jackson and had been embroiled in a long-standing custody battle over A.J. and her sister, I.J.

¶ 30                    6. *Defendant*

¶ 31    Defendant testified he was A.J.'s stepfather and was 45 years old at the time of trial. According to defendant, he lived with Shelly, A.J., and I.J. beginning in 2004. Defendant testified Jackson did not exercise regular visitation until A.J. was approximately 10 years old. According to defendant, both A.J. and I.J. called him "daddy" and he shared disciplinary responsibilities with Shelly. According to defendant, he and Shelly worked overlapping shifts at Walmart. Defendant testified he was never alone with A.J. or I.J.

¶ 32    Defendant testified he had a big fight with A.J. regarding her father failing to exercise his visitation time. According to defendant, this argument occurred on October 14,

2017. Defendant denied touching A.J. inappropriately, making A.J. touch his penis, and trying to put his penis inside of A.J.

¶ 33                                7. *Shelly Peak*

¶ 34        Shelly Peak testified she lived with defendant and their son. Shelly testified she lived with A.J., I.J., and defendant in Clinton, Indiana, in 2004 or 2005. Subsequently, the family moved to Paris, Illinois. Shelly testified she went shopping with defendant, A.J., and I.J. According to Shelly, she and defendant both worked at Walmart and attempted to coordinate their shifts so A.J. and I.J. were with Shelly's mother or with Jackson. Shelly testified she had physical custody of A.J. and I.J. following her divorce from Jackson in 2005. According to Shelly, Jackson did not exercise his visitation rights for four years until he remarried in 2010 or 2011.

¶ 35        Shelly testified defendant worked multiple jobs with varying hours. According to Shelly, it was "[a] very rare occasion that [defendant] watched them [(A.J. and I.J.)]."

¶ 36                           C. Verdict and Sentence

¶ 37        The jury found defendant guilty on all counts. Following the sentencing hearing, the trial court sentenced defendant to 15 years' imprisonment on count I; 12 years' imprisonment on count III concurrent to count I; 15 years' imprisonment on count II consecutive to count I; 12 years' imprisonment on count IV concurrent to count II; and the court found count V merged with counts I through IV. Defendant filed a motion to reconsider the sentence, alleging the court failed to consider factors in mitigation and considered improper factors in aggravation. The court denied the motion to reconsider the sentence.

¶ 38        This appeal followed.

¶ 39                              II. ANALYSIS

¶ 40    On appeal, defendant argues (1) he received ineffective assistance of trial counsel, (2) the State failed to prove him guilty beyond a reasonable doubt, (3) he was denied a fair and impartial jury trial, (4) his "conviction for predatory criminal sexual assault and aggravated criminal sexual assault should be reduced to the lesser-included offense of aggravated criminal sexual abuse," (5) the trial court erroneously imposed consecutive sentences, and (6) additional charges the State brought in an amended information filed on the second day of trial should be vacated.

¶ 41    A. Ineffective Assistance of Counsel—Additional Witnesses

¶ 42    Defendant first argues he received ineffective assistance of counsel where trial counsel failed to investigate, subpoena, and call known witnesses to testify at trial. The State argues this claim is better suited for a postconviction petition.

¶ 43    In his brief, defendant identifies witnesses trial counsel allegedly failed to investigate, subpoena, and call to testify. Specifically, defendant identifies "Dr. Lauer, a psychologist from Sarah Bush Lincoln, and a HRC counselor in Paris, Illinois." However, defendant fails to allege what exculpatory evidence these witnesses would provide or the prejudice he suffered due to counsel's failure to investigate these witnesses.

¶ 44    A claim of ineffective assistance of counsel is governed by the familiar framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. The deficient-performance prong requires a defendant to show that counsel's performance was objectively unreasonable under prevailing professional norms. *People v. Veach*, 2017 IL 120649, ¶ 30, 89 N.E.3d 366. The prejudice prong requires a

- 10 -

showing that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Id.* A defendant must satisfy both prongs to prevail on a claim of ineffective assistance of counsel. *Id.*

¶ 45    As the State notes, the record is inadequate to support defendant's claim of ineffective assistance of counsel. Nothing in the record shows what the witnesses' testimony would have been, nor does the record indicate why counsel failed to investigate the witnesses. Because the record is inadequate, we agree this issue is better suited for a postconviction petition where defendant will have the opportunity to develop a record which sufficiently demonstrates deficient performance. *Id.* ¶ 46.

¶ 46                    B. Sufficiency of the Evidence

¶ 47    Defendant next argues the State failed to prove him guilty beyond a reasonable doubt because the State's witnesses failed to make an in-court identification of defendant.

¶ 48    When determining whether sufficient evidence supported a conviction, "our function is not to retry the defendant." *People v. Sutherland*, 223 Ill. 2d 187, 242, 860 N.E.2d 178, 217 (2006). Instead, we must question " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We allow all reasonable inferences in the light most favorable to the State. *People v. Beauchamp*, 241 Ill. 2d 1, 8, 944 N.E.2d 319, 323 (2011). It is the province of the finder of fact to determine the credibility of a witness and the finding is entitled to great weight. *People v. Smith*, 185 Ill. 2d 532, 542, 708 N.E.2d 365, 370 (1999). We reverse only where the evidence is

so unsatisfactory, unreasonable, or improbable that it raises a reasonable doubt as to the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209, 808 N.E.2d 939, 947 (2004).

¶ 49    Defendant argues the State's witnesses never made an in court identification of defendant and, therefore, the evidence was insufficient to prove defendant guilty beyond a reasonable doubt. Defendant ignores the fact that Jackson, Cope, Rogers, and A.J. identified defendant by name. Additionally, defendant testified he was the named defendant and his own witnesses identified him by name. Although no in-court identification was made, a valid inference that defendant was the person accused by the victim and named in the charging documents could be made based on the testimony heard by the jury.

¶ 50    C. Ineffective Assistance of Counsel—*Voir Dire*

¶ 51    Defendant next argues he received ineffective assistance of counsel where counsel failed to challenge two jurors who were victims of sexual abuse.

¶ 52    As discussed above, claims of ineffective assistance of counsel are reviewed under the standard set forth in *Strickland*, 466 U.S. 668. To prevail under *Strickland*, the defendant must show defense counsel's performance was deficient and prejudice resulted from that deficient performance. *People v. Houston*, 226 Ill. 2d 135, 143, 874 N.E.2d 23, 29 (2007). Specifically, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). Our review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

- 12 -

the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Id.* A defendant is entitled to reasonable representation, and a mistake in strategy or judgment does not, by itself, render the representation incompetent. *People v. Fuller*, 205 Ill. 2d 308, 331, 793 N.E.2d 526, 542 (2002). "[C]ounsel's actions during jury selection are generally considered a matter of trial strategy. Accordingly, counsel's strategic choices are virtually unchallengeable." *People v. Manning*, 241 Ill. 2d 319, 333, 948 N.E.2d 542, 550 (2011).

¶ 53        The record shows trial counsel failed to challenge two jurors who were prior victims of sexual abuse. However, the record also shows counsel questioned each of the jurors about their experiences and whether the jurors could remain impartial. Both jurors stated they could remain objective and impartial. Additionally, one juror made statements that indicated some skepticism about the charges against defendant. Counsel's choice not to challenge these jurors was clearly a matter of trial strategy and, therefore, was "virtually unchallengeable." *Id.* The record shows trial counsel vigorously questioned the potential jurors and exercised peremptory challenges against other prospective jurors. Counsel adequately questioned the two jurors at issue and concluded they would serve as impartial arbiters. Defendant has failed to rebut the presumption that counsel's *voir dire* choices were sound trial strategy.

¶ 54                              D. Reduction of the Offense

¶ 55        Next, defendant argues his conviction for predatory criminal sexual assault and criminal sexual assault should be reduced to the lesser-included charge of aggravated criminal sexual abuse because there was no medical evidence proving penetration occurred. Defendant argues the State has forfeited this issue by failing to respond in its brief on appeal. However, forfeiture is a limitation on the parties and not this court. *People v. Holmes*, 2016 IL App (1st)

132357, ¶ 65, 48 N.E.3d 185. Moreover, the State did address this argument in its discussion of the sufficiency of the evidence to prove defendant guilty beyond a reasonable doubt.

¶ 56 The evidence in this case was sufficient to prove defendant guilty beyond a reasonable doubt. A.J. testified defendant's penis penetrated her anus and mouth. "The testimony of a single witness, if positive and credible, is sufficient to sustain a conviction although it is contradicted by the defendant." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 62, 104 N.E.3d 1251. The jury found A.J.'s testimony credible and that finding is entitled to great weight. *Smith*, 185 Ill. 2d at 542. Moreover, "[i]t is not necessary that corroborating medical evidence be admitted to prove that penetration did occur." *People v. Morgan*, 149 Ill. App. 3d 733, 738, 500 N.E.2d 1121, 1125 (1986). We conclude the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of predatory criminal sexual assault and criminal sexual assault.

¶ 57 E. Consecutive Sentences

¶ 58 Defendant next argues the trial court erred by sentencing him to consecutive sentences for offenses that were not committed as part of a single course of conduct. Defendant failed to raise this argument at sentencing or in a posttrial motion and, thus, forfeited this claim. *People v. McCoy*, 405 Ill. App. 3d 269, 273, 939 N.E.2d 950, 953 (2010). Defendant does not argue for plain-error review. Even if defendant had preserved this claim for appeal, the issue is meritless. Defendant was convicted of two counts of predatory criminal sexual assault of a child, and consecutive sentences were mandatory. 730 ILCS 5/5-8-4(d)(2) (West 2014)).

¶ 59 F. Amended Information

¶ 60 Finally, defendant argues the amended information filed on the second day of his jury trial violated his right to due process and counts II (predatory criminal sexual assault of a

- 14 -

child) and IV (aggravated criminal sexual assault) should be vacated. Defendant has waived this argument. *People v. Bell*, 2020 IL App (4th) 170804, ¶ 117, 145 N.E.3d 740. " 'Waiver is the intentional relinquishment of a known right, whereas forfeiture is the failure to make a timely assertion of a known right.' " *Id.* (quoting *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 51, 129 N.E.3d 755). Prior to the commencement of defendant's jury trial, defense counsel informed the court it had discussed the charges with the State and stated, "My understanding, there would be—there are two acts of penetration that he is alleging. So, he will be moving to amend the information, without objection." Further, counsel stated, "Whenever he can get around to filing that amended information is fine with us."

¶ 61　　　　Defendant argues he received ineffective assistance of counsel because counsel failed to challenge the amended information. Defendant argues he need not show prejudice under the second prong of the *Strickland* analysis. In support, defendant relies on *People v. Benitez*, 169 Ill. 2d 245, 257, 661 N.E.2d 344, 350 (1996). However, *Benitez* involved a motion to dismiss one of the defendant's charges on the second day of trial. *Id.* at 259. Here, defendant challenges the charging instrument for the first time on appeal. Accordingly, *Benitez* does not apply, and defendant must demonstrate prejudice. *People v. Gilmore*, 63 Ill. 2d 23, 29, 344 N.E.2d 456, 460 (1976) ("When attacked for the first time on appeal an information or indictment is sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct.").

¶ 62　　　　Our review of the record shows the charges in the amended information were not a surprise to defendant as they involved the same conduct and the same victim as the initial information. Additionally, the record shows defendant was aware of the substance of the

amended charges prior to trial and was able to adequately prepare his defense. We conclude defendant has failed to demonstrate prejudice due to counsel's failure to challenge the amended information.

¶ 63                                    III. CONCLUSION

¶ 64            For the reasons stated, we affirm the trial court's judgment.

¶ 65            Affirmed.