NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241376-U

NOS. 4-24-1376, 4-24-1377 cons.

IN THE APPELLATE COURT

FILED
May 20, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* M.M. and G.M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Logan County |
| Petitioner-Appellee, | ) | Nos. 21JA12 |
| v. | ) | 21JA13 |
| Benjamin M., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Jonathan C. Wright, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Harris and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed the trial court's judgment terminating respondent's parental rights, as the court's failure to explicitly find a factual basis for respondent's stipulation of unfitness did not constitute plain error.

¶ 2     Respondent, Benjamin M., appeals from the trial court's judgment finding him unfit and terminating his parental rights as to his minor children, M.M. (born in 2016) and G.M. (born in 2018). The court also terminated the parental rights of the minors' mother, Sadie J., who is not a party to this appeal. On appeal, respondent argues that the court violated his due process rights by accepting his stipulation to one of the State's allegations of parental unfitness without finding a factual basis for that stipulation. For the following reasons, we affirm.

¶ 3                          I. BACKGROUND

¶ 4     On June 18, 2021, the State filed petitions for adjudication of wardship of M.M.

and G.M. The State alleged that both minors were neglected because their environment was injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2020)) where (1) respondent and Sadie failed to ensure a safe and nurturing environment for the minors, (2) there was domestic violence between respondent and Sadie, and (3) respondent and Sadie committed or allowed to be committed a sex offense against the minors' sibling. The State also alleged that the minors were not receiving the proper support, education, and medical care necessary for their well-being (705 ILCS 405/2-3(1)(a) (West 2020)).

¶ 5        The trial court held a shelter care hearing on June 18, 2021. The State called Nichole Komnick, a child protection investigator at the Illinois Department of Children and Family Services (DCFS), to testify. Komnick testified as follows. DCFS began investigating the case in March 2021, when it received a report of domestic violence between respondent and Sadie. In addition to M.M. and G.M., Sadie had two older children, P.L. and O.L., with another man. All four children lived with respondent and Sadie. In March 2021, after experiencing domestic violence, Sadie and all four children left to live in Kansas with Sadie's mother because Sadie was fearful of respondent. However, they returned to Illinois in May 2021 to attend forensic interviews with DCFS. In an interview on May 21, 2021, P.L. and O.L. disclosed that respondent physically abused Sadie, P.L., and O.L., and sexually abused P.L. and O.L. P.L. disclosed that respondent vaginally penetrated her with both his penis and fingers. O.L. disclosed physical and sexual abuse by respondent, including choking, being put up against a wall, striking with a belt, and sexual touching. In her interview, Sadie admitted to being physically abused by respondent and witnessing respondent's physical and sexual abuse of P.L. and O.L. from the time that P.L. was four years old. Sadie disclosed that this abuse initially happened weekly but progressed to daily, and respondent convinced her to participate in the abuse by kissing, touching, or performing oral

sex on P.L. After P.L., O.L., and Sadie were interviewed, both Sadie and respondent were arrested, and M.M. and G.M. were taken into protective custody and placed in foster care with relatives. P.L. and O.L. began residing with their biological father.

¶ 6        Based on the interviews revealing domestic violence and sexual abuse, the trial court found that there was probable cause for the State's petitions and there was an immediate and urgent necessity to remove the children from the home. The court found that no reasonable efforts could be made to avoid the situation, especially given respondent's and Sadie's incarceration, and shelter care was in the best interest of the minors. The court thus granted guardianship and custody of the minors to DCFS.

¶ 7        At a status hearing on December 16, 2021, Sadie admitted to the State's allegation that G.M. and M.M. were neglected in that their environment was injurious to their welfare because of the domestic violence between her and respondent. The State provided a factual basis, stating that Sadie was abused by respondent daily, and on one occasion in March 2021, respondent pulled Sadie's hair, kneed her in the stomach, threw her down on the floor, and punched her in the face. The trial court accepted Sadie's admission and found the minors neglected.

¶ 8        The trial court held the dispositional hearing on April 28, 2022. Respondent conceded that he was incarcerated and unable to care for the children, so granting guardianship to DCFS would be appropriate under the circumstances. The court found that it was in the best interest of G.M. and M.M. to be adjudicated neglected and made wards of the court. The court found both parents to be unfit, in part due to their incarceration rendering them unable to care for, train, protect, or educate the minors. The court denied visitation. Respondent appealed the dispositional order. On August 22, 2022, the appellate court affirmed the court's order. *In re M.M.*, No. 4-22-0449 (2022) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 9    At seven subsequent permanency hearings between June 2022 and August 2024, the trial court ordered custody and guardianship of the minors to remain with DCFS.

¶ 10    The State filed petitions to terminate both respondent's and Sadie's parental rights as to M.M. and G.M. on February 28, 2023, and filed amended petitions on July 20, 2023, August 5, 2024, and September 9, 2024.

¶ 11    The trial court held the termination hearing on September 12, 2024. Sadie stated that she was willing to sign a directed adoption to her sister, while respondent was willing to sign a directed adoption only to the minors' current caregiver. As they could not agree to whom they would sign a directed adoption, the court proceeded with the termination hearing. Respondent stipulated to paragraph 8.b. of the petition, which alleged that respondent was an unfit person to have a child and his parental rights should be terminated because he failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors from the parent during the nine-month period between December 17, 2021, and September 17, 2022 (750 ILCS 50/1(D)(m)(i) (West 2022)). The court did not recount the nature of that allegation or request a factual basis for the stipulation before accepting respondent's stipulation as to his unfitness.

¶ 12    At the State's request, the trial court admitted into evidence three exhibits: (1) a certified conviction in case No. 21-CF-133, respondent's criminal case, (2) a certified conviction in case No. 21-CF-134, Sadie's criminal case, and (3) a transcript of Sadie's testimony on May 22, 2024, in respondent's criminal case. People's exhibit No. 1 showed that on July 31, 2024, respondent was convicted of seven counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2020)) and sentenced to seven consecutive life sentences. People's exhibit No. 2 showed that on June 28, 2024, Sadie was sentenced to 10 years in prison on two counts of permitting the sexual abuse of a child (720 ILCS 5/11-9.1A(a) (West 2020)). People's

exhibit No. 3 consisted of Sadie's testimony regarding respondent's sexual abuse of all four children. At the State's request, the court took judicial notice of the adjudicatory order filed December 6, 2021, finding the minors neglected and the dispositional order on April 28, 2022, finding both parents unfit.

¶ 13     The trial court proceeded to the best interest portion of the hearing. The State asked the court to consider the best interest report. Sadie's counsel called her as a witness. Sadie testified that respondent was demanding, abusive, controlling, and manipulative. She stated she believed that her children need her attention, that she loves and cares for them, and that it was in their best interest to have their mother present. On questioning from respondent's counsel, Sadie testified that the children had originally been placed with her sister but were taken from her care because she was involved in an active DCFS case. During argument, respondent's counsel asserted that the children need permanency before Sadie is released in two years, so the matter should proceed to adoption as soon as possible.

¶ 14     The trial court found that the State had proven by a preponderance of the evidence that termination was in the best interest of the minors. The court noted that the minors had been without a parent for three years due to respondent's and Sadie's incarceration, after living in a home where their siblings were exposed to "some of the most egregious acts of criminal sexual assault this Court has ever heard on the bench and hopes to ever hear on the bench." The court stated that the minors deserved permanency, and though they had been recently moved to a different foster placement, they appeared to be thriving.

¶ 15     Respondent timely appealed, and the trial court appointed counsel to represent him. Respondent's appellate counsel initially moved to withdraw pursuant to the procedure set forth in *Anders v. California*, 386 U.S. 738 (1967). Respondent filed a lengthy response that raised a

number of arguments. Because we found the motion to withdraw to be both procedurally and substantively deficient and respondent identified a potentially nonfrivolous challenge to the court's acceptance of his stipulation without a factual basis, we denied counsel's motion on March 3, 2025, and ordered full briefing, which was completed on April 21, 2025.

¶ 16                                    II. ANALYSIS

¶ 17          Initially, we note that this is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Under that rule, this court is required to issue its decision within 150 days after the filing of the notice of appeal unless there has been "good cause shown." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). Here, respondent's late notice of appeal was filed on November 7, 2024, and this court's disposition was due to be filed by March 14, 2025. That filing deadline has passed. However, this delay is due to a necessary change in the briefing schedule, as this court denied respondent's appellate counsel's motion to withdraw on March 3, 2025, and ordered the parties to fully brief the case, as discussed above. In light of the delay resulting from the new briefing schedule, we find that good cause exists to issue our disposition after the 150-day deadline.

¶ 18          The involuntary termination of parental rights involves a two-step process pursuant to section 2-29(2) of the Juvenile Court Act of 1987 (705 ILCS 405/2-29(2) (West 2022)). The State must first prove by clear and convincing evidence that the respondent is unfit. *In re C.M.*, 305 Ill. App. 3d 154, 163 (1999). Here, respondent stipulated that he was unfit because he failed to make reasonable efforts to correct the conditions that were the basis for the removal of the children during the nine-month period between December 17, 2021, and September 17, 2022 (750 ILCS 50/1(D)(m)(i) (West 2022)). On appeal, he argues that the trial court violated his due process rights by accepting his stipulation without a sufficient factual basis.

¶ 19          The State argues that respondent has forfeited this argument, while respondent

contends we may still review it under the plain error doctrine. "Generally, an issue that was not objected to during trial and raised in a posttrial motion is forfeited on appeal." *In re J.C.*, 2024 IL App (4th) 240747, ¶ 29; see also *In re William H.*, 407 Ill. App. 3d 858, 869-70 (2011) ("It is well established that, to preserve an alleged error for appellate review, a party must, even in child custody cases, object at trial and file a written posttrial motion addressing it.") However, forfeiture of an issue "is a limitation on the parties and not on this court." *People v. Hanson*, 212 Ill. 2d 212, 216 (2004). As "termination of parental rights affects a fundamental liberty interest, a court of review may consider whether a forfeited issue constituted plain error." *J.C.*, 2024 IL App (4th) 240747, ¶ 30. This doctrine "may be applied in civil cases only where the act complained of was a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process." (Internal quotation marks omitted.) *J.C.*, 2024 IL App (4th) 240747, ¶ 30. The first step in any plain error analysis is to determine whether error occurred. *People v. Johnson*, 2024 IL 130191, ¶ 44.

¶ 20            A parent's control, custody, and care of their children is a fundamental right, and therefore, the procedures terminating those rights "must meet the requisites of the due process clause." *In re M.H.*, 196 Ill. 2d 356, 365, 362-63 (2001). To that end, "due process requires a circuit court to determine whether a factual basis exists for an admission of parental unfitness before it accepts the admission." *M.H.*, 196 Ill. 2d at 368. Presenting a factual basis (1) "ensures that the State has a basis for its allegation of unfitness," (2) "makes certain that a parent's admission of unfitness is knowing and voluntary," (3) "allows the parent to hear the State describe the alleged facts relating to fitness," and (4) "gives the parent an opportunity to challenge or correct any facts that are disputed." *M.H.*, 196 Ill. 2d at 365-66. This procedure obviates any " 'danger that a parent may understand the State's alleged grounds of unfitness but may not realize that his or her conduct

does not fall within those allegations.' " *M.H.*, 196 Ill. 2d at 366-67 (citing *In re M.H.*, 313 Ill. App. 3d 205, 215 (2000)).

¶ 21        This court addressed a similar issue in *In re Dal. D.*, 2017 IL App (4th) 160893. In that case, the respondent argued that the trial court erred in accepting her stipulation of unfitness because the court made no findings of fact. *Dal. D.*, 2017 IL App (4th) 160893, ¶ 39. The record showed that the court read aloud the allegation to which she was stipulating, the State provided a brief factual basis, and the court explicitly found that there was a factual basis for the respondent's stipulation of unfitness but did not make its own findings of fact. *Dal. D.*, 2017 IL App (4th) 160893, ¶ 17. We held that the court implicitly adopted the State's factual basis and thus properly accepted respondent's stipulation. *Dal. D.*, 2017 IL App (4th) 160893, ¶ 42. While we did not base our holding on this, we noted that "a court may *sua sponte* look anywhere in its prior proceedings to determine if a factual basis can be shown," and if so, "the State was not required to offer actual evidence of [the respondent's] unfitness." *Dal. D.*, 2017 IL App (4th) 160893, ¶ 37.

¶ 22        We again addressed this issue in *In re P.W.*, 2022 IL App (4th) 220373-U, an unpublished case. We held that even though the trial court did not make a specific finding that there was a sufficient factual basis for the respondent's stipulation of unfitness, the respondent's due process rights were not violated because "the trial court had an abundance of evidence in the record to support its accepting respondent's stipulation." *P.W.*, 2022 IL App (4th) 220373-U, ¶ 39. We noted that the same judge presided over the entire case and thus was "intimately familiar with respondent's progress and lack thereof and the evidence the State would present to prove its allegations." *P.W.*, 2022 IL App (4th) 220373-U, ¶ 39. The record also showed that the court had a dialogue with the respondent and her attorney about her stipulation and even took a brief recess so that the respondent could speak with her attorney. *P.W.*, 2022 IL App (4th) 220373-U, ¶¶ 19-

20. The court thereafter confirmed the respondent understood the next steps of the proceeding and noted aloud that the respondent's stipulation was " 'made in consultation with her counsel that there is sufficient evidence.' " *P.W.*, 2022 IL App (4th) 220373-U, ¶ 20. Thus, while the court may not have explicitly asked for or found a sufficient factual basis for the stipulation, it at least took steps to ensure that the respondent understood the consequences of her stipulation. See *M.H.*, 196 Ill. 2d at 365-66.

¶ 23 Here, the trial court did not make a finding that there was a factual basis for respondent's stipulation. The State did not present a factual basis at the hearing, and the court did not explain that it relied on evidence heard during earlier proceedings. The State merely identified paragraph 8.b. of the termination petitions, and the court confirmed that paragraph with respondent. Neither the parties nor the court discussed the specific contents of that allegation before the court accepted respondent's stipulation. This case thus differs from *Dal. D.*, 2017 IL App (4th) 160893, ¶¶ 41-42, where the State presented and the court explicitly found a factual basis, and *P.W.*, 2022 IL App (4th) 220373-U, ¶¶ 19-20, where the court asked additional questions to confirm the respondent's understanding of the consequences of her stipulation. Here, the court did neither. There is thus no basis in the record to conclude that respondent's stipulation was knowing and voluntary. The court erred in accepting respondent's stipulation without soliciting a factual basis or a confirmation of respondent's understanding. Soliciting a factual basis is a simple, yet necessary, step before the court can accept a stipulation of unfitness. See *P.W.*, 2022 IL App (4th) 220373-U, ¶ 43.

¶ 24 The next question is whether this error was "a prejudicial error so egregious that it deprived the complaining party of a fair trial and substantially impaired the integrity of the judicial process." (Internal quotation marks omitted.) *J.C.*, 2024 IL App (4th) 240747, ¶ 30. Respondent

does not explain how the trial court's failure to explicitly find a factual basis rises to this level of error and has thus not met his burden of demonstrating that there was plain error. See *People v. Naylor*, 229 Ill. 2d 584, 593 (2008) ("Under both prongs of the plain-error doctrine, the burden of persuasion remains with the defendant." (Internal quotation marks omitted.)); *People v. McCoy*, 405 Ill. App. 3d 269, 274 (2010) (determining that a party forfeited plain error review by presenting only a conclusory argument).

¶ 25        Our own review of the case law has revealed no cases finding plain error in this context. Though this error implicates respondent's due process rights, not every due process violation constitutes plain error, and merely asserting that respondent was deprived of a fair trial does not make that true. See, *e.g.*, *People v. Allen*, 222 Ill. 2d 340, 353 (2006) ("Thus, while defendant herein has proven a due process violation which amounted to error by showing that he was required to wear an electronic stun belt at trial without the court having first determined that it was necessary," the defendant failed to demonstrate second-prong plain error); *People v. Rathbone*, 345 Ill. App. 3d 305, 311 (2003) ("[I]t is not a sufficient argument for plain error review to simply state that because sentencing affects the defendant's fundamental right to liberty, any error committed at that stage is reviewable as plain error."). The plain error doctrine "is not a general savings clause for any alleged error, but instead is designed to address *serious injustices*." (Emphasis in original). *People v. Williams*, 299 Ill. App. 3d 791, 796 (1998). Moreover, "errors that are reviewable under [this] prong of the plain error rule are rare," as it focuses on structural errors in the proceedings. *Johnson*, 2024 IL 130191, ¶¶ 53, 55. After a careful review of the record and considering respondent's failure to present a thorough or cogent legal analysis of why we should recognize a new category of structural error, we hold that respondent has not met his burden under the plain error rule and has thus forfeited plain error review. See *McCoy*, 405 Ill. App. 3d at

274.

¶ 26                                     III. CONCLUSION

¶ 27          For the reasons stated, we affirm the trial court's judgment.

¶ 28          Affirmed.